FRANK COSTANZO *et al., Appellants,* v. NORMAN J. HARRIS *et al., Respondents.**

\*Reported in 427 P.2d 963.

*Alf M. Jacobsen,* for appellants.

*Leo C. Kendrick* (of *Gavin, Robinson, Kendrick, Redman & Mays*), for respondents.

STAFFORD, J.†—This is an appeal from a summary judgment.

There is substantial agreement on the following facts: On May 8, 1961, Frank Costanzo and wife (hereinafter referred to as the appellants) sold a 1,200 acre farm to Norman Harris and wife (hereinafter referred to as the respondents). The respondents paid $16,000 on a total purchase price of $60,844.71. They executed a note for the balance and secured it by a purchase money mortgage.

Thereafter, respondents suffered financial reverses. On January 15, 1962, they filed a declaration of homestead on the entire farm. The declaration asserted that the total value of the farm was estimated to be $52,000, the unpaid balance $46,844.71, and respondents' equity $5,655.29.

The homestead premises had no dwelling thereon. The respondents did not occupy it as a home from the time they first acquired possession in May of 1961, until they left September 29, 1963, at the end of the redemption period. At some time during their occupancy they dug an area for a foundation and hauled some lumber to the premises. However, the lumber was never used.

In May of 1962, the mortgage indebtedness became delinquent and appellants commenced an action to foreclose the mortgage. As a result, on August 8, 1962, judgment was rendered against respondents in the amount of $52,802.44 and foreclosure of the property was ordered. The appellants purchased the property at a sheriff's sale for the amount of their judgment.

The respondents remained in possession of the premises throughout the redemption period. During that time they received $4,425.55 from the sale of hay and the rental of pasture land.

---

†Judge Stafford is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

During the redemption period respondents failed to pay either the real property taxes or interest on the purchase price. Consequently, appellants notified both the respondents and those who were purchasing hay or renting pasture that appellants intended to claim a lien on all funds derived therefrom. This was done prior to the termination of the redemption period.

Respondents did not relinquish the property until the last day of the period. Within 30 days thereafter appellants initiated this independent action to foreclose a lien on the proceeds of the hay crop and pasture rental in the sum of $4,039.90. This was done pursuant to the second proviso of RCW 6.24.210.[1]

Respondents resisted the lien foreclosure and asserted their homestead as an affirmative defense. They contended that the homestead relieved them of the need to account for "issues" (e.g., goods and profits of the land. Black, Law Dictionary, (4th ed. 1951)), under the third proviso of RCW 6.24.210.[2]

Appellants unsuccessfully sought a summary judgment. Next, they asserted that respondents were not entitled to the protection of the third proviso of RCW 6.24.210 because the homestead had not been "selected in the manner pro-

---

[1]RCW 6.24.210 "Possession during period of redemption. The purchaser from the day of sale until a resale or redemption, . . . shall be entitled to the possession of the property purchased . . .: [2] *Provided, further,* That as to any land so sold which is at the time of the sale used for farming purposes, or which is a part of a farm used, at the time of sale, for farming purposes, the judgment debtor shall be entitled to retain possession thereof during the period of redemption and the *purchaser . . . shall, if the judgment debtor does not redeem, have a lien upon the crops raised or harvested thereon during said period of redemption, for interest on the purchase price . . . during* said period of redemption *and for taxes becoming delinquent during the period of redemption* together with interest thereon: [3] *And, provided further,* That in case of any *homestead selected in the manner provided by law* and *occupied for that purpose at the time of sale,* the *judgment debtor shall have the right to retain possession thereof during the period of redemption without accounting for issues for value of occupation.*" (Paragraphs numbered for clarity.) (Italics ours.)

[2]*Ibid.* third proviso.

vided by law . . . ."[3] They also attempted to establish that the homestead had been taken out in bad faith because the true value far exceeded the declared value; that it should be appraised pursuant to RCW 6.12.140; that it had not been "occupied for that purpose at the time of sale, . . . ." as required by statute,[4] and that the farm had been used, and was intended to be used exclusively as a farm-crop operation rather than as a residence in violation of RCW 6.12.010.[5]

The trial court held that the appellants' challenge to the homestead's validity was barred because it had not been raised in a timely manner and because the foreclosure proceeding was res judicata to such a determination in a subsequent independent action. The foreclosure proceeding and its auxilliary proceedings were also held to be res judicata to a subsequent challenge of the homestead's value in an independent action.

Later, respondents' motion for a summary judgment was granted. The trial court held that there was no genuine factual dispute.

Appellants assert that the trial court erred because it failed to consider evidence in contravention of the "valid" homestead claimed by respondents' affirmative defense. They also assign error to the summary judgment.

QUAERE: Was the foreclosure and its auxiliary proceedings res judicata to a subsequent challenge of the homestead's validity?

▮ It is a condition precedent to the occupancy of property as a valid homestead, during the redemption period, that it be "selected in the manner provided by law and oc-

---

[3]*Ibid.* third proviso.

[4]*Ibid.* third proviso.

[5]RCW 6.12.010. "Homestead, what constitutes. The homestead consists of the *dwelling house, in which the claimant resides,* . . . and the land on which the same are situated, and by which the same are surrounded, or land without improvements *purchased with the intention of building a house and residing thereon,* selected at any time before sale, . . . ." (Italics ours.)

cupied for that purpose at the time of sale, . . . ."[6] *State ex rel. Columbia Valley Lumber Co. v. Superior Court,* 147 Wash. 574, 576, 266 Pac. 731 (1928). This proposition is basic to the assertions of both parties. If the respondents failed to select the homestead "in the manner provided by law" and occupy it "for that purpose at the time of sale",[7] the appellants must prevail, unless they are barred from challenging those facts.

█ If the respondents had selected their homestead "in the manner provided by law and occupied [it] for that purpose at the time of sale"[8] they would have been entitled to remain on the premises during the redemption period. *First Nat'l Bank of Everett v. Tiffany,* 40 Wn.2d 193, 242 P.2d 169 (1952). They also would have been authorized to remain on the premises during the entire redemption period without a valid homestead because the land was "at the time of the sale used for farming purposes, . . . ."[9] Since the respondents could have remained upon the premises in either event, the subject of "homestead validity" and the manner of occupancy "at the time of the sale" was not an issue at the time of foreclosure. In fact, at that time the trial court struck a proposed finding of fact which provided in part: "Defendants Harris are entitled, *by virtue* of their Declaration of *Homestead,* . . . *to possession* of said premises during the period of redemption after sale . . . ." (Italics ours.)

Thus, nothing connected with the foreclosure proceeding was res judicata to a later independent determination of whether the homestead was in fact "selected in the manner provided by law and occupied for that purpose at the time of sale."[10]

Next, it would have been impossible to dispose of an issue of "homestead validity" had it been raised during the

[6]*Op. cit. supra,* RCW 6.24.210, third proviso.

[7]*Ibid.*

[8]*Ibid.*

[9]*Op. cit. supra,* RCW 6.24.210, second proviso.

[10]*Op. cit supra,* RCW 6.24.210, third proviso.

confirmation of the sheriff's sale. The only objection that the court could have considered at that time would have been alleged irregularities relating to the manner in which the sale was conducted. The question of a person's rights under a homestead declaration would have *been left to an independent action. Domke v. Beck,* 18 Wn.2d 568, 139 P.2d 1017 (1943); *Scott v. Guiberson,* 72 Wash. 36, 129 Pac. 886 (1913). Thus, nothing which occurred at that stage of the proceedings could have been res judicata to a challenge of the homestead's validity at a subsequent time. *Traverso v. Cerini,* 146 Wash. 273, 263 Pac. 184 (1928).

QUAERE: May a homestead be challenged in a subsequent independent action?

■ *Scott v. Guiberson, supra,* contemplates that the determination of rights under a claimed homestead exemption may be decided in an independent action for that purpose. See also *Domke v. Beck, supra; Traverso v. Cerini, supra.* Such subsequent independent action is not a collateral attack upon the sheriff's sale. *Domke v. Beck, supra.* The cases do not indicate that such subsequent independent action must be initiated during the period of redemption.

QUAERE: When must the homestead's validity be challenged?

A judgment creditor has a right to contest the validity of a homestead claim. The legislature has not prescribed the procedure by which such a contest may be instituted. This has been left to the courts. The question is whether the procedure used to challenge the claim of homestead is permissible. *Domke v. Beck, supra; Traverso v. Cerini, supra.*

■ Under RCW 6.24.210 "if the judgment debtor *does not redeem,*"[11] (Italics ours) it is necessary to decide whether a lien will attach to the "crops raised or harvested . . . *during* said year of redemption, . . ."[12] (Italics ours) or whether there is an exemption of the "issues" (*e.g.,* goods and profits of the land) produced on the homestead property "*during* the period of redemption,

---

[11]*Op cit. supra,* RCW 6.24.210, second proviso.
[12]*Ibid.*

. . . ."[13] (Italics ours.) The quoted phrases make it evident that the redemption period must first terminate before it is possible to determine what has transpired *during* the statutory interval of time.

A real problem arises only if a judgment debtor fails to redeem. However, a judgment creditor has no way to anticipate whether the judgment debtor will choose to redeem or whether he will quit the premises. The debtor is entitled to occupy the premises until the last day, as happened in the instant case. He is not required to give notice of his intention. Consequently, the judgment creditor has no means by which to foresee the debtor's choice, or determine his own course of legal action for that matter.

If the judgment debtor redeems at the end of the period there is no problem. The delinquent taxes and interest on the purchase price will be paid. In that event, a challenge to the homestead prior to the end of the redemption period would have been an expensive and useless gesture. It is illogical to require a judgment creditor to institute what might very well be a completely useless action on the mere chance that a judgment debtor *might* not redeem.

There is another important consideration. In many cases it is virtually impossible for either party to know whether there will be "crops raised or harvested" on the land or "issues" (*e.g.*, goods and profits of the land) produced on the homestead property *until after* the event has happened. Although one may anticipate that there might be future "crops raised or harvested" on the land or "issues" produced on the homestead property, neither their extent nor their value can be determined until after the event. Until the end of the redemption period one cannot tell, with any degree of accuracy, whether there will be anything upon which a lien may attach or whether there will be "issues" produced which will be worth challenging.

The procedure followed by the appellants was proper under the circumstances. The independent action was

---

[13]*Op. cit. supra,* RCW 6.24.210, third proviso.

brought within a reasonable time after the period of redemption.

QUAERE: Should the court have appointed appraisers?

Appellants assign error to the trial court's refusal to appoint appraisers for the determination of property value pursuant to RCW 6.12.140 *et seq.* However, the assignment of error is not well taken.

■ RCW 6.12.140 *et seq.* does not apply to debts secured by valid mortgages on the premises. RCW 6.12.100; *Aronson v. Murk,* 67 Wn.2d 1, 406 P.2d 607 (1965). It refers to the levying of execution *against the surplus equity* over and above the exemption value in a parcel of real estate which has been made subject to a homestead filing.

This statute is the only one which authorizes the court to appoint appraisers. No attempt was made in this or the foreclosure case to reach the *surplus equity.* Thus, the trial court was not authorized to appoint the statutory appraisers. However, we do not intend to imply that appellants may not retain their own private appraisers to use as witnesses in a subsequent independent action.

QUAERE: Must the homesteader's declared value be challenged during the redemption period?

Respondents suggest that their declaration of homestead value is conclusive because it was not challenged during the redemption year, citing *John Hancock Mut. Life Ins. Co. v. Wagner,* 174 Wash. 185, 24 P.2d 420, 27 P.2d 1118 (1933). However, that case is not now applicable. Its result stems from the fact that a mortgagee was said to have had a right to the appointment of appraisers under RCW 6.12.140 *et seq.* (formerly Rem. Rev. Stat. 537 *et seq.*). The case merely held that the homesteader's declared value was conclusive because the mortgagee failed to use the statutory steps available to challenge that value. The court did not confine its conclusion to the "redemption period." The redemption period was merely a part of the time and fact pattern.

Our recent decision in *Aronson v. Murk, supra,* makes it evident that the provisions of RCW 6.12.140 were *not* avail-

able to the appellants in this case. Thus, the reasoning in the *Hancock* case, *supra,* is inappropriate.

We cannot logically deny the appellants' request for statutory appraisers on the one hand and then bar their present challenge of homestead value by holding that they should have used an appraisal procedure previously found to be inapplicable.

The homesteader's declared valuation is not conclusive under the facts of this case.

QUAERE: Was a summary judgment authorized?

█ Whether the homestead was selected in the manner provided by law and whether it was occupied for the purpose of a homestead at the time of sale presents a mixed question of law and fact in this case. The presence of a real issue as to any material fact renders a trial necessary. The trial court may not resolve factual issues by means of a summary judgment. *State ex rel. Bond v. State,* 62 Wn.2d 487, 383 P.2d 288 (1963).

The judgment is reversed and the case remanded for trial on the issues.

FINLEY, C. J., WEAVER, ROSELLINI, and HALE, JJ., concur.

[No. 38786.    Department One.    May 18, 1967.]

*Reported in 427 P.2d 974.