[No. 1809-1. Division One. January 7, 1974.]

BANK OF ANACORTES, *Respondent*, v. LOGAN COOK *et al.*,
*Appellants*, MICHAEL C. LIPSCOMB *et al.*,
*Respondents*.

*Richard B. Sanders,* for appellants.

*John N. Cheney, Voris & Lipscomb,* and *Richard C. Platte,* for respondents.

SWANSON, C.J.—A question never precisely resolved by the many cases discussing the Washington homestead exemption statute, RCW 6.12, is presented by the somewhat unusual facts involved in this appeal: Is a homestead declaration invalid if the claimant vacates the premises he selected as a homestead and permanently moves to another state before the declaration is filed with the county auditor, even though the homestead claimant in fact was in full compliance with the residence requirements of the homestead statute on the date he signed the declaration? The trial court determined that a declaration of homestead filed

under such circumstances is invalid, denied a motion to set aside the sheriff's sale of the property described in the homestead claim, and dismissed a third-party alternative claim for malpractice against the attorney who had prepared the homestead declaration but had failed to file it until after the claimant left the state.

The trial court's unchallenged findings of fact indicate that Logan Cook and his wife Sandra L. Cook, hereinafter referred to as "Cook," purchased the property in question which is located in Anacortes, in September 1968, and resided there continuously until October 2, 1970, when the Cook family moved to Elgin, Illinois. The court specifically found:

> They intended that their move would be permanent in nature and had no intention of returning to the State of Washington or their former residence.

Finding of fact No. 3, in part. Prior to the move to Illinois, in September 1970 Logan Cook consulted with his attorney, third-party defendant Michael C. Lipscomb, in Bellingham, regarding financial problems, and on September 28, 1970, executed a declaration of homestead as to the Anacortes property. It is not disputed that Cook's statement in the declaration that he then resided on the property in question was true and accurate on September 28, 1970, the date Cook signed it. It was also established, and the court found:

> The day after he signed the Declaration, Dr. Cook encountered a severe marital situation and three days later (Friday, October 2, 1970) moved his family and belongings to Illinois. Mr. Lipscomb had no information that Dr. Cook was contemplating the move or had actually moved out until two weeks after the move took place.

Finding of fact No. 11, in part. On approximately October 16, 1970, prior to the filing of the homestead claim, Cook executed an earnest money agreement for the purchase and sale of the Anacortes residence, but the sale never took place. It was not until October 19, 1970, some 17 days after Cook moved to another state and vacated the property he

now claims as homestead, that Lipscomb filed the declaration of homestead in the auditor's office as required by RCW 6.12.070.

On the same day Cook left this state for Elgin, Illinois, October 2, 1970, the respondent Bank of Anacortes, hereinafter referred to as "bank," brought suit against Cook because he had defaulted in his payments on a $4,700 promissory note held by the bank which Cook had executed on June 1, 1970, in consideration for a personal loan. A default judgment was entered November 16, 1970; thereafter, the sheriff levied on Cook's Anacortes residence, and an execution sale followed on January 8, 1971. Since the date of the sheriff's sale the bank has been in possession of the premises and has rented them to third persons.

On March 23, 1972, Cook filed a motion to set aside the January 8, 1971, sheriff's sale. The bank countered by moving to invalidate the declaration of homestead. Cook responded by filing a third-party complaint alleging malpractice against attorney Lipscomb, seeking alternative relief from Lipscomb in the event the bank was successful in its effort to invalidate the homestead. The trial court concluded that Cook's declaration of homestead is invalid because Cook did not reside on the property at the time the declaration was filed with the county auditor. The court also concluded that attorney Lipscomb was not negligent as a matter of law and dismissed the third-party complaint. This appeal follows.

Cook assigns error to the trial court's conclusions of law which invalidated his homestead and denied his motion to set aside the sheriff's sale, and contends that the court's findings of fact do not support such legal conclusions. His argument is essentially that the court's findings make it clear that his homestead declaration was prepared in accordance with the statutory requirements of RCW 6.12.040 and .060, was executed in good faith and was recorded and filed with the county auditor before the sheriff's sale. RCW 6.12.010 and .040. Having followed such statutory procedure in all respects, Cook argues that his homestead is entitled

to the presumption of validity given by RCW 6.12.090. As to the statutory residence requirements relating to homesteads, RCW 6.12.010, .050, and .060, Cook contends that such requirements go only to the time the declaration is executed and not to the time of filing. He asserts that the purpose of filing is one of notice only, and respondent bank received appropriate notice prior to the date of the sheriff's sale; consequently, he contends the trial court was in error in refusing to set the sale aside.

The homestead exemption statutes were enacted pursuant to Const. art 19, § 1, for the purpose of providing a shelter for the family and an exemption for a home. *Clark v. Davis*, 37 Wn.2d 850, 226 P.2d 904 (1951). The homestead statutes are favored in the law and should be liberally construed. *Lien v. Hoffman*, 49 Wn.2d 642, 306 P.2d 240 (1957). They do not protect the rights of creditors; rather, they are in derogation of such rights. *First Nat'l Bank v. Tiffany*, 40 Wn.2d 193, 242 P.2d 169 (1952), but as the court in *Barouh v. Israel*, 46 Wn.2d 327, 331, 281 P.2d 238 (1955), observed: "No citation of authority is necessary for the rule that a declaration of homestead must be filed in good faith." It is also well settled that a declaration of homestead is a right or privilege given a property owner by statute, so that its validity depends upon compliance with the statutory requirements and only by such compliance does the homestead come into existence. *United States Fidelity & Guar. Co. v. Alloway*, 173 Wash. 404, 23 P.2d 408 (1933). Moreover, while a homestead valid on its face is entitled to a presumption of validity, such presumption shall exist only "until the validity thereof is contested in a court of general jurisdiction in the county or district in which the homestead is situated." RCW 6.12.090. *See Costanzo v. Harris*, 71 Wn.2d 254, 427 P.2d 963 (1967).

In analyzing the court's conclusion that the homestead claimed was rendered invalid by the failure of Cook to reside on the premises on the date of filing, we turn to a brief review of the language of the applicable statutes. RCW 6.12.010 provides in part: "The homestead consists of

the dwelling house, *in which the claimant resides* ...."
(Italics ours.) RCW 6.12.050 states in part: "The premises
thus included in the homestead *must be actually intended
or used as a home for the claimants* ..." (Italics ours.)
RCW 6.12.060(2) states that the declaration of homestead
must contain "[a] statement that the person making it *is
residing on the premises or has purchased the same for a
homestead and intends to reside thereon and claims them
as a homestead.*" (Italics ours.) A plain reading of the
statues just quoted leads to the inescapable conclusion that
a primary purpose of the legislature in enacting them was
to protect the house in which the claimant resides or in-
tends to reside. Further, in relation to that purpose, RCW
6.12.040 states in part: "In order to select a homestead
[claimant] *must execute and acknowledge* ... *a dec-
laration of homestead, and file the same for record.*" (Ital-
ics ours.) In addition, RCW 6.12.080 provides in part:
"From and after the time the declaration is filed for record
the premises therein described constitute a homestead."

▇ The cases interpreting these statutory provisions
uniformly hold that a homestead declaration has no legal
effect and therefore is ineffectual for any purpose until it is
filed. In other words, there is no homestead in any property
until the statutory procedure for claiming one is completed,
which includes not only the execution of a declaration but
its filing with the county auditor. Quite obviously, if the
premises described in the declaration do not constitute a
homestead until after the declaration is filed, there is no
homestead at all prior to that time. In this regard, our
court, in the early case of *Brace & Hergert Mill Co. v.
Burbank,* 87 Wash. 356, 151 P. 803 (1915), after reviewing
the statutory provisions relative to the claim of homestead,
stated at page 365: "The language of these sections renders
it plain that there is no homestead right in any specific
property until it is selected, and such selection evidenced in
writing and recorded as therein provided." *See also Wash-
burn v. Wilen,* 96 Wash. 480, 165 P. 403 (1917); *Byam v.*

*Albright,* 94 Wash. 108, 162 P. 10 (1916); *In re Estate of Borrow,* 92 Wash. 143, 158 P. 735 (1916); *Hookway v. Thompson,* 56 Wash. 57, 105 P. 153 (1909). Inasmuch as a homestead claim or declaration is ineffectual for any purpose until it is filed and may not be given retroactive effect, *Hookway v. Thompson, supra,* it is apparent that the extent to which the applicable statutory requirements have been satisfied must be measured by the facts as they exist on the date the homestead is to become effective—the date of filing. RCW 6.12.080.

We therefore hold that the statutory requirements for a homestead relating to residence are determined as of the date of filing rather than the date the claim is executed, and failure to comply with such residency requirements renders the declaration of homestead invalid. We believe that logic demands and public policy requires such a construction of the statutes so that a declaration of homestead is true on the date it is effective. If this were not so, little imagination is required to foresee the mischief and confusion that could be caused by the failure of claimants to be in compliance with residence requirements on the date of filing their declarations of homestead. The homestead declaration not only must speak from the date it is filed, but also it must speak the truth.

The trial court found, and it is not disputed, that Cook and his family did not reside on the premises selected as a homestead on the date the declaration to that effect was filed, but 17 days prior thereto had moved to the state of Illinois with no intention to return to the state of Washington. Although the purpose of the homestead law is to provide a shelter for the family and an exemption for a home, Cook was not seeking such shelter or exemption because he had already left the state by the time the declaration of homestead was filed. The trial court's findings support its conclusions of law invalidating the homestead. Under such circumstances, the trial court correctly denied the motion to set aside the sheriff's sale of January 8, 1971, and held

the homestead declaration filed on October 19, 1970, to be invalid.

Cook's third-party alternative malpractice claim against his attorney Michael C. Lipscomb, as stated in his statement of points relied upon for appeal, is based upon these two assertions of negligence: (1) the failure to inform Cook that it was necessary for him to reside on his homestead at the time the declaration was filed amounted to negligence; and (2) the failure to file the declaration promptly constituted negligence.

The operative facts as revealed by the trial court's findings of fact are as follows:

> During the first part of September, 1970, Dr. Cook met with his attorney, Mr. Michael Lipscomb, in the latter's Bellingham office. Dr. Cook's financial problems were discussed with the main action contemplated being the filing of a bankruptcy. Other actions were also discussed, including the eventual filing of a declaration of homestead which Mr. Lipscomb agreed to prepare.

Finding of fact No. 8.

> On Monday, September 28, 1970, Dr. Cook returned to Mr. Lipscomb's office for the purpose of executing the previously prepared Declaration of Homestead. . . . The Declaration was duly notarized by Mr. Lipscomb. Mr. Lipscomb agreed to file the Declaration, however, did not state he would file it immediately.

Finding of fact No. 9, in part.

> During neither meeting did Dr. Cook indicate to Mr. Lipscomb that he was attempting to sell his residence or was in any way contemplating a move. Dr. Cook did not understand that it was necessary for the Declaration of Homestead to be filed prior to the time he moved from the residence, should he decide to do so.

Finding of fact No. 10.[1]

---

[1]Appellant Cook assigns error to the trial court's refusal to make a specific finding that "Lipscomb failed to inform Dr. Cook that it was necessary for one to live on the premises at the time the declaration of homestead was filed." In support of this claim of error he relies upon this statement in the narrative statement of facts which the court certified as having occurred during the trial of the case: "Dr. Cook

The day after he signed the Declaration, Dr. Cook encountered a severe marital situation and three days later (Friday, October 2, 1970) moved his family and belongings to Illinois. Mr. Lipscomb had no information that Dr. Cook was contemplating the move or had actually moved out until two weeks after the move took place. On October 19, 1970, Mr. Lipscomb filed the Declaration of Homestead with the Skagit County Auditor.

Finding of fact No. 11.

 Given the quoted findings, we may examine the trial court's memorandum opinion to interpret or better understand them, but not to contradict them. *See Ferree v. Doric Co.,* 62 Wn.2d 561, 383 P.2d 900 (1963); *Huzzy v. Culbert Constr. Co.,* 5 Wn. App. 581, 489 P.2d 749 (1971). In his memorandum opinion, the trial judge stated:

> When Logan Cook consulted Lipscomb, the main action contemplated was to file a petition in bankruptcy for Cook, together with other courses of action, including the eventual filing of a homestead declaration. There was no urgency in the action to be taken at this time because of the need to resolve some of Cook's financial problems outside the bankruptcy court.
>
> During the two meetings Cook and Lipscomb had, Cook gave no indication that he intended to move from his home or from the state, but to the contrary gave every indication that he intended to stay where he was.
>
> When Cook came in to sign the Declaration three weeks after the first consultation, there still was no urgency in the situation. Although he did not tell Lipscomb, Cook was considering selling the home to get a larger house and was also considering moving back to his home state of Illinois. Cook had the impression Lipscomb

testified that he was not informed that it was necessary for his Declaration of Homestead to be filed prior to the time he moved from his residence, should he decide to do so." We are not persuaded by this argument because the trial court could disbelieve Dr. Cook's testimony and accept contrary testimony. In the absence of a complete statement of facts, we do not know what, if any evidence there was to the contrary. In any event, the trial court did find that "Dr. Cook did not understand that it was necessary for the Declaration of Homestead to be filed prior to the time he moved from the residence, should he decide to do so." Finding of fact No. 10, in part.

would file the Declaration at the appropriate time but Lipscomb did not state he would file it immediately because he had no feeling of urgency.

■ It was under the foregoing factual circumstances that the trial court concluded that Lipscomb was not negligent. We agree. As stated in *Ward v. Arnold,* 52 Wn.2d 581, 584, 328 P.2d 164 (1958):

> An attorney at law, when he enters into the employ of another person as such, undertakes that he possesses a reasonable amount of skill and knowledge as an attorney, and that he will exercise a reasonable amount of skill in the course of his employment, but he is not a guarantor of results and is not liable for the loss of a case unless such loss occurred by reason of his failure to possess a reasonable amount of skill or knowledge, or by reason of his negligence or failure to exercise a reasonable amount of skill and knowledge as an attorney. [Citation omitted.]

Cook had the burden of proving causation to the same degree that it must be proved in an ordinary negligence case. *Ward v. Arnold, supra.* We cannot say that Cook has met this burden in the absence of a showing of any facts brought to attorney Lipscomb's attention by his client, or of which he should have been aware or reasonably should have foreseen, that would require prompt filing. Specifically, the findings and memorandum opinion of the trial court indicate there is no evidence to support a finding that Lipscomb either knew, or should have reasonably foreseen, that Cook would leave his residence at any time within the near future or that immediate filing of the homestead declaration was otherwise necessary. To the contrary, there is evidence that filing of the homestead declaration was to be delayed until other financial matters of Cook had been resolved.

■ It therefore appears that the trial court could properly conclude that there was not a sufficiently close, actual causal connection between Lipscomb's conduct in failing to file the declaration of homestead in a timely manner and the harm caused Cook, because Lipscomb

could not reasonably have foreseen the independent, intervening cause of such harm, namely, Cook's "severe marital situation" necessitating his departure from the premises 4 days after he signed the declaration. *See Rikstad v. Holmberg,* 76 Wn.2d 265, 456 P.2d 355 (1969); *Ward v. Arnold, supra.* Under such circumstances, we conclude the trial court did not err when it determined that the 17-day filing delay here in question does not amount to negligence by attorney Lipscomb.

Judgment affirmed.

WILLIAMS and CALLOW, JJ., concur.

Petition for rehearing denied April 9, 1974.

Review denied by Supreme Court June 17, 1974.