[No. 1776-1. Division One. July 15, 1974.]

MUKILTEO EDUCATION ASSOCIATION *et al., Respondents,* v.
MUKILTEO SCHOOL DISTRICT
No. 6, *Appellant.*

*Anderson, Hunter, Dewell, Baker & Collins* and *Julian C. Dewell,* for appellant.

*Cogdill & Deno* and *W. Mitchell Cogdill,* for respondents.

SWANSON, C.J.—Mukilteo School District No. 6, Snoho-

mish County, Washington (District), defendant[1] in a lawsuit brought by the Mukilteo Education Association (MEA),[2] Mary Bess Johnson,[3] and eleven certificated teachers employed by the District, including Richard Watson, Donald Bailey, Mary Hancock, John Clark, Lu Vern Allen, Phil Escandon, Dennis Wittren, Bob Walsh and Ben Herbert,[4] appeals a judgment entered June 26, 1972, by the Snohomish County Superior Court which awarded certain salary benefits based upon military service to the respondent teachers. The respondents cross-appeal from the trial court's refusal to award attorney fees. In addition, respondent Escandon cross-appeals from that portion of the judgment which denied him retroactive salary benefits.

The respondent teachers, represented by the MEA and its president, Mary Bess Johnson, brought suit against the District seeking new contracts giving them credit on the salary schedule for military service in accordance with the past and allegedly still existing District policy of allowing such credit. The suit was brought pursuant to RCW 28A.58.450, et seq., and RCW 28A.88.010, et seq., as an appeal of a November 8, 1971, resolution by the District's Board of Directors (Board) which respondents contend illegally changed former policy in such a way as to deny any salary credit to them for military service and thereby adversely affected them in their contract status with the District. The

---

[1] The complaint also named as defendants the Board of Directors of Mukilteo School District No. 6, specifically including William C. Petersen, Robert Reith, George O. Woods, Helen M. Subitch and Ernest Ludwick, Jr., the superintendent of the District and the secretary of the Board; however, these individual defendants were dismissed from the action and there is no cross-appeal from such dismissal.

[2] "Plaintiff, Mukilteo Education Association, is the duly elected employee organization representing the certificated employees of the Mukilteo School District in negotiations of proposed school policy with the Board of Directors of the Mukilteo School District No. 6 pursuant to RCW 28A.72.010, et seq." Finding of fact No. 1, in part.

[3] "Plaintiff, Mary Bess Johnson, is the duly elected President and representative of the Mukilteo Education Association, and was so at all material times hereto." Finding of fact No. 1, in part.

[4] Two other teachers, Dale McCully and Ruberta Sanford, so far as we can discern from the record, abandoned their claims; in any event, neither the findings of fact, conclusions of law, nor the judgment mention such plaintiffs.

trial court found that the District has an existing policy of allowing up to 2 years of credit on the salary schedule to certificated teachers for time spent in the military service[5] and this policy was followed in the cases of some certificated teachers who were hired during the period from 1954 through 1970, but not in the case of any of the respondent teachers hired during the period from 1970 to 1971, notwithstanding the fact that each had served at least 1 year in the military service.

The court concluded that the Board's effort to change the military credit policy by the November 8, 1971, resolution is null and void, of no legal effect, and not binding upon the MEA or other respondents because the Board failed to comply with RCW 28A.72.030,[6] as implemented by a negotiations agreement between the District and the MEA which requires that prior to any change of policy the Board must meet, confer and negotiate with representatives of the MEA and also must read the text of any proposed change in policy at two regularly called public meetings prior to its adoption. Moreover, having thus determined that the District's military credit policy must be deemed to be still in existence, the trial court concluded that the exclusion of the respondent teachers from the military service salary credit benefits allowed to other teachers in the same class —i.e., teachers employed by the District who had served over 1 year in the military service—amounted to denial of their equal protection rights under the state and federal constitutions. The court determined that each of the re-

---

[5]The court described the policy as follows: "This policy provides that a certificated teacher must spend a minimum of one (1) year in active service, and not otherwise be at the top of the particular salary schedule then in effect, in order to be elibible to receive such credit." Finding of fact No. 4, in part.

[6]RCW 28A.72.030 states in part as follows:

"Representatives of an employee organization . . . shall have the right . . . to meet, confer and negotiate with the board of directors of the school district . . . to communicate the considered professional judgment of the certificated staff prior to the final adoption by the board of proposed school policies relating to . . . personnel, hiring and assignment practices, leaves of absence, salaries and salary schedules and noninstructional duties."

spondent teachers is entitled to be issued an employment contract reflecting credit on the salary schedule for time spent in military service and granted judgment in favor of each respondent teacher, with the exception of Phil Escandon, for a sum representing the salary to which each would have been entitled if such credit had been included in her or his original employment contract. As to Phil Escandon, the trial court granted judgment in the sum representing military service salary credit for a portion of the 1971-72 school year, but denied his claim for retroactive allowance of such military service salary credit to the 1970-71 school year, indicating that Escandon may apply to the District for such relief that may be granted pursuant to the grievance procedure available to all teachers under a "Certified Contractual Agreement" between the District and the MEA.

In its appeal, the District assigns error primarily to the trial court's findings of fact relative to the existence of a military service salary credit policy and the applicability of constitutional equal protection provisions. The claimed errors present two primary issues:

(1) Did the trial court correctly find the existence of a military service salary credit policy *binding upon the District*?

(2) Is the effect of such a policy determined by contract principles or by the provisions of the equal protection clause of the federal and state constitutions?

In resolving these issues, it is necessary to consider the chronology of events leading up to the commencement of respondents' lawsuit in more detail, as follows: Between 1954 and 1970, the District followed the practice of giving teachers credit on the salary schedule for up to 2 years of military service in lieu of teaching experience.[7] The district

---

[7] Finding of fact No. 4 states in part: "This policy has been followed for some certificated teachers presently in the Mukilteo School District, and who were hired from 1954 through 1970. There are several certificated personnel in the Mukilteo School District who are receiving credit on the salary schedule for up to two years spent in the military." Appellant assigns error to all of finding of fact No. 4; however, we have determined that the quoted portion is supported by substantial evidence and therefore it must be deemed a verity for purposes of this appeal.

adopted annual salary schedules, but 1964 was the last year in which the salary schedule reflected or made any reference to credit for military service. *See* RCW 28A.67.066. A written reference to such credit was included in drafts of proposed rules and regulations pertaining to the salary schedule in the 1968-69 school year, but such reference was eliminated from the final accepted rules and regulations.[8] Notwithstanding the absence of any reference in the salary schedule to credit for military service, 31 teachers other than respondents in the District during the 1971-72 school year who had been in the military received credit for their military service on the salary schedule and such credit was reflected in their written contracts.

Respondents Allen, Escandon and Watson were first hired by the District in 1970, and respondents Clark, Bailey, Hancock, Herbert and Walsh were first hired in 1971. Respondent Wittren was initially hired on February 1, 1971, to complete the remaining portion of the 1971 school year. The teachers hired for the 1970-71 school year had their contracts formalized at meetings on May 4, 1970, and April 6, 1970. The contracts for the teachers hired for the 1971-72 school year were approved on November 8, 1971.[9] Three of the teachers, Walsh, Allen and Wittren, were told at the time of their initial interviews with District agents

[8]Finding of fact No. 5 states: "Reference to credit on the salary schedule for time spent in the military was omitted from the School District's salary schedule commencing with the 1965-66 school year. There was a reference to military credit in two drafts of the Proposed Rules and Regulations pertaining to the salary schedule in the 1968-69 school year. This reference was not contained in the final accepted Rules and Regulations."

[9]No appeal to the superior court was taken by respondents from the Board actions approving their contracts. Appellant argues that the approval of such contracts, which did not include any salary credit for military service was the action that was adverse to them, and a failure to appeal from such Board action renders a jurisdictional bar to their seeking relief in the superior court in view of the 30-day limit imposed by RCW 28A.88.010. We are persuaded, however, that as respondents contend, the Board's resolution of November 8, 1971, was the action to which the statutory time limit on appeals applies and that they made a timely appeal from such action.

that no credit would be allowed for military service. Nothing was said about military credit at the time of the interviews to five of the other respondents—Herbert, Hancock, Clark, Bailey and Watson. Only respondent Escandon was told at the time of his interview that he would be allowed credit for his military service; however, he mistakenly represented to the District at the time he was hired that he had served only 10 months in the military whereas he had actually served 1 year, 7 months.

As previously indicated, on November 8, 1971, the Board, at a regular meeting, passed the resolution from which respondents sought relief in the trial court, which recited that the Board had eliminated any reference to salary credit to new employees for military service when it adopted the 1969-70 salary schedule and that it was established hiring procedure not to give new employees salary credit for military service on the salary schedule. The resolution further provided that in order to rectify any inadvertent mistakes made in hiring employees based upon representations that they be given such credit, the Board would allow credit to three employees because of the mistaken representations made to them at the time of their hiring. Finally, the resolution stated:

> It is further moved that the Board reiterate the said hiring procedure . . . and no credit be given any new employee for prior military service subsequent to the hiring for the school year 1968-69, except for those persons who were hired on the express condition, and representation, that such credit would be given, as hereinbefore specified.

Finding of fact No. 15, in part. Within 30 days of the passage of this resolution, this lawsuit was commenced.[10]

---

[10]We note that the "Certified Contractual Agreement" between the District and the MEA was in effect at the time of the November 8, 1971, resolution, and this agreement outlined a grievance procedure to be followed by any employee of the District for the administrative resolution of any action or lack of action by the Board believed by such employee to be unjust. Only one of the respondents, Dennis Wittren, was involved in such grievance procedure following passage of the November 8, 1971, resolution, and therefore appellant argues on

The threshold question, which we believe to be also the dispositive question, raised by this appeal is the correctness of the trial court's determination that the District "has existing a policy of allowing up to two (2) years' credit on the salary schedule to certificated teachers for time spent in the military service." Finding of fact No. 4, in part. It is upon the resolution of this question that the respondent teachers' contractual rights and such equal protection rights as might apply are dependent. We also observe preliminarily that any claimed violation of the equal protection clause of either the federal or state constitutions must rest upon the denial or unequal application of some statutory or contractual right. There being no claim of a statutory right[11] to military service salary credit, any constitutional claim under the equal protection clause must rest upon contractual grounds.

In the recent case of *Kirk v. Miller*, 83 Wn.2d 777, 522 P.2d 843 (1974), it is stated at page 781:

> The general relationship then between the school authorities and teachers in the public schools of our state is created by contract and governed by general principles of contract law. 78 C.J.S. *Schools and School Districts* § 183 (1952).

appeal that respondents failed to exhaust their administrative remedies before bringing suit, directing our attention to *Smith v. General Elec. Co.*, 63 Wn.2d 624, 388 P.2d 550 (1964), and other authority. We have determined, however, that the trial court correctly concluded that it would be a useless act to follow such grievance procedure because the superintendent of the District was the final authority in the grievance procedure and he would be unable to decide contrary to the Board's resolution. Under such circumstances, the exhaustion of remedies doctrine would not require respondents to follow the grievance procedure prior to appealing to the trial court for relief.

[11]For example, in *Malcom v. Yakima County Consol. School Dist. 90*, 23 Wn.2d 80, 159 P.2d 394 (1945), our state Supreme Court held that a statutory minimum wage provision prohibiting a school board from contracting with a teacher for a sum less than $100 per month rendered a provision in a contract providing for a lesser sum, though voluntarily agreed to, to be void and against public policy. *See Vallet v. Seattle*, 77 Wn.2d 12, 459 P.2d 407 (1969); *State ex rel. Beck v. Carter*, 2 Wn. App. 974, 471 P.2d 127 (1970).

A leading case explaining the relationship between teachers and a school district, and cited with approval in *Kirk*, is *State ex rel. Mary M. Knight School Dist. 311 v. Wanamaker*, 46 Wn.2d 341, 281 P.2d 846 (1955), in which it is stated at page 344:

> Teachers are employees of the district which employs them. They are not public or state officers. [Citations omitted.] The legislature has left the question of employment solely within the discretion of the school board and the applicant. No district can be forced, under the statute, to enter into a contract of employment with a teacher against the will of a majority of the board of directors, and, by the same token, no applicant can be forced to teach school in any district against his will. [Citations omitted.]

*See also Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 509 P.2d 67 (1973); *Lande v. South Kitsap School Dist. 402*, 2 Wn. App. 468, 469 P.2d 982 (1970).

The respondent teachers premised their action on the failure of the Board to include military service salary credits in their contracts. The trial court found that such contracts violated an "existing policy" of allowing such credit and therefore ordered new contracts to be issued to reflect such credit. In so doing, the court also concluded that the Board's apparent attempt to change such "existing policy" by the November 8, 1971, resolution was void.

The trial court's findings of fact give us no clear indication of what the court meant by "policy"; under such circumstances, we may look to the trial court's oral opinion to interpret or better understand the meaning of the word "policy" as it is used in the findings and conclusions. *See Ferree v. Doric Co.*, 62 Wn.2d 561, 383 P.2d 900 (1963); *Bank of Anacortes v. Cook*, 10 Wn. App. 391, 517 P.2d 633 (1974). It is apparent from the trial judge's oral opinion that the policy which he found existed was oral only. As the trial judge stated in his opinion:

> The pivotal point of this case is the question of whether or not there was a policy for giving military credit, and, if so, when it terminated, if it did.

. . . The evidence is clear that even though reference to this military credit was apparently dropped in 1965 from the salary schedule and rules and regulations, it continued to be given through 1969 into 1970, for the 70-71 school year. There is no question that there was a *policy, unwritten, true,* but a policy for giving up to two years' credit for military service.

. . .

. . . It seems obvious to this Court that the *policy, though not written,* was in existence and the administration itself carried on this policy even after the alleged change.

(Italics ours.) Consistent with the oral opinion, the trial court's findings of fact indicate that commencing in 1965, there was no written regulation, rule, or salary schedule, or other written provision for the allowance of military service salary credit. We therefore conclude the trial court's finding of fact No. 4—that a policy of granting such credit existed—is limited to a finding that an *unwritten or oral policy* or practice, course, or method of action, was carried on by the school board administrators.

 Although the evidence clearly establishes that the district has engaged in an unwritten practice or policy of allowing salary credit for military service, such practice or policy can only be effective if it creates a judicially enforceable right. As our state Supreme Court observed in *Noe v. Edmonds School Dist. 15,* 83 Wn.2d 97, 515 P.2d 977 (1973), at page 103:

School districts are municipal or quasi-municipal corporations. [Citations omitted.] They are created by the legislature and can exercise only such powers as the legislature has granted in express words, or those necessary or fairly implied in, or incident to, powers expressly granted or those essential to the declared objects and purposes of such district. [Citation omitted.] Where a statute, which is the source of a municipal or quasi-municipal corporation's power, confers specific functions to particular officers or boards, such functions may not be delegated to others [Citation omitted] unless the statute expressly authorizes such delegation to some other officer or body. [Citation omitted.] School districts are no exception to the rule.

Respondents have cited no case in which a municipal or quasi-municipal corporation, such as a school board, has been held bound by an oral or unwritten policy except as such oral representations or course of conduct might support a claim based upon equitable estoppel.

 On the contrary, as pointed out in 16 E. McQuillin, *Municipal Corporations* § 46.09(b), at 691 (3d rev. ed. 1972):

> School directors must act as a board, a legal entity; that is, their action must be at a meeting duly assembled, in the manner prescribed, e.g., after the giving of notice, and there must be a quorum present to enable the board to transact business. It has been aptly announced that a board of education, like any other municipal body, speaks only through and by its record of what was done when acting as a body in a corporate meeting; no two members or all of them acting individually or separately can bind the board or make a contract for it.

(Footnotes omitted.)

Accordingly, our state statutes describing the functions of a school district and its board of directors make no provision for the unwritten promulgation of policy, rules or regulations. On the contrary, a number of statutes specifically provide that policy statements, or rules and regulations, must be in writing.[12] As to the creation of school district policy regarding salaries, RCW 28A.67.066 states:

---

[12]Thus, for example, RCW 28A.58.100 states:

"Every board of directors . . . shall:

" . . .

"(2) Adopt *written* policies granting leaves to persons under contracts of employment with the school district(s) . . . the board of directors shall adopt *written* policies granting to such persons annual leave . . ." (Italics ours.)

RCW 28A.58.101 provides in part:

"Every board of directors . . . shall:

" . . .

"(2) Adopt . . . *written* rules and regulations regarding pupil conduct, discipline, and rights." (Italics ours.)

RCW 28A.58.103 provides in part:

"Every board of directors . . . shall:

"(1) . . . set forth in *writing* and adopt, policy relative to the selection of instructional materials." (Italics ours.)

Every school district by action of its board of directors shall adopt annual salary schedules and reproduce the same by *printing, mimeographing or other reasonable method,* which shall be the basis for salaries for all certificated employees in the district.

(Italics ours.) RCW 28A.67.070 states in part:

No teacher, principal, supervisor, superintendent, or other certificated employee, holding a position as such with a school district, hereinafter referred to as "employee", shall be employed except by *written* order of a majority of the directors of the district at a regular or special meeting thereof . . .
The board shall make with each employee employed by it a *written* contract, which shall be in conformity with the laws of this state, and limited to a term of not more than one year.

(Italics ours.) It therefore appears, in the context of the case at bar, that the lack of a *written* policy for the granting of military service salary credit renders any right to such credit one which is not judicially enforceable.

To recapitulate, we hold (1) the trial court's finding that the District had an existing policy of allowing military service salary credit was a finding limited to the existence of an oral, or unwritten, policy; (2) a school district can act only through its board of directors and can be bound only by such actions of the board which are reflected in written salary schedules, or written rules and regulations as required by statute; therefore, (3) the District's oral, or unwritten, policy of granting military service salary credit creates no judicially enforceable rights against the District; and (4) the representations of the school superintendent and his assistant are not binding upon the Board, except as to the possible creation of rights based upon equitable estoppel. In connection with the last point, we note that none of the respondent teachers, except Phil Escandon, was promised military service salary credit by the Board's hiring representatives.

Inasmuch as we have concluded that the respondents have no judicially enforceable contract or statutory

right to military service salary credit, it necessarily follows that the equal protection clauses of the state and federal constitutions are inapplicable to the case at bench. In other words, at least since 1965, there has been no written policy of granting military service salary credit and therefore there has been no action by the District through the Board creating a contract right for some but arbitrarily denying it to others within the same class. *See Trister v. University of Mississippi,* 420 F.2d 499 (5th Cir. 1969); *State ex rel. Rhodes v. Cook,* 72 Wn.2d 436, 433 P.2d 677 (1967). As to whether, under equitable principles, teachers who were told that they would receive military service salary credit are entitled to such credit, we express no opinion, because no such representations were made to any of the respondents except Phil Escandon. *See Rust v. Western Washington State College,* 11 Wn. App. 410, 523 P.2d 204 (1974). In any event, in the absence of a written policy or contract provision, there is no right to military service salary credit enforceable through the operation of equal protection principles. The trial court erred in concluding that the refusal of the District through its Board to grant military service salary credit to respondents violated their constitutional rights. Accordingly, the judgment of the trial court must be reversed.

As to the assignments of error raised by respondents' cross-appeal, it is apparent from our holding herein that respondents' claim for attorney fees is without merit. Similarly, with regard to the cross-appeal of Phil Escandon, it is evident that respondent Escandon is entitled to no relief pursuant to the judgment of the trial court. As we have previously noted, however, the trial court's finding of fact No. 11 indicates that representations were made by agents of the District, at the time Escandon was interviewed for employment, to the effect that he would be allowed credit on the salary schedule for the time he spent in military service. In addition, finding of fact No. 8 states that Escandon mistakenly represented to the District that he had served in the military only 10 months, rather than the 1

year, 7 months he had actually served. These findings are supported by substantial evidence. Therefore, we are of the opinion that respondent Escandon is entitled to have his entire claim considered by the District in accordance with the grievance procedure set forth in the applicable "Certified Contractual Agreement" between the Board and the MEA.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

HOROWITZ and CALLOW, JJ., concur.

Petition for rehearing denied October 23, 1974.

Review denied by Supreme Court December 16, 1974.