**In re WEST CHESTNUT REALTY OF HAVERFORD, INC., Debtor.**

**Bankruptcy No. 93–15996 SR.**

United States Bankruptcy Court,
E.D. Pennsylvania.

April 15, 1993.

**54**

J. Gregg Miller, Pepper, Hamilton & Scheetz, Philadelphia, PA.

Charles Golden, Edmond George, Obermeyer, Rebmann, Maxwell & Hippel, Philadelphia, PA.

Joanne Semeister, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA.

Frederic J. Baker, Philadelphia, PA, Asst. U.S. Trustee.

### OPINION

STEPHEN RASLAVICH, Bankruptcy Judge.

This matter is before the Court on the Motion of V. DiFrancesco & Sons ("DiFrancesco") seeking an Order prohibiting Debtor's use of cash collateral under 11 U.S.C. § 363. The Debtor, West Chestnut Realty of Haverford, Inc., and the Official Committee of Unsecured Creditors ("the Committee")

oppose the Motion. After considering the parties' memoranda, and upon consideration of the Stipulation of Facts entered into between DiFrancesco and the Debtor, DiFrancesco's Motion will be denied.

### Background

The following facts have been stipulated to by the Debtor and DiFrancesco:

On or about July 22, 1982, DiFrancesco sold the Debtor certain real property situated in Haverford Township, Delaware County, Pennsylvania, known as the Llanerch Quarry (the "Property"). The purchase price of the Property was One Million Dollars ($1,000,000). The Debtor paid Thirty–Five Thousand Dollars ($35,000) as a down payment, and DiFrancesco financed the balance of the purchase price of Nine Hundred Sixty–Five Thousand Dollars ($965,000).

To evidence its obligations to DiFrancesco, the Debtor executed a note dated July 22, 1982, in the original principal amount of Nine Hundred Sixty–Five Thousand Dollars ($965,000), with the Debtor, as a maker, and DiFrancesco, as Payee, (the "Note").

The Note is secured by a certain mortgage dated July 22, 1982 executed by the Debtor, as mortgagor, in favor of DiFrancesco, as mortgagee, (the "Mortgage"). The Mortgage was recorded in the Office of the Recorder of Deeds for Delaware County, Pennsylvania in Volume 30, Page 551 on August 2, 1982. No UCC–1 Financing statements have been filed in connection with the Note and Mortgage.

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 14, 1993, and continues to operate a landfill on the Property which is authorized by permits issued from the appropriate state and local agencies.

█ Based on an assignment of the Property's rents, issues and profits pursuant to a standard assignment clause in the Mortgage, it does not appear that any genuine dispute exists regarding the validity and/or perfection of DiFrancesco's security interest in the rents, issues, and profits of the Property.[1] The parties dispute is whether the security

---

1. Under Pennsylvania law, a mortgagee's lien in rents and profits under an assignment clause

attaches and is perfected at the moment of execution, delivery, and timely recordation of the

interest extends to revenues received by the Debtor from customers depositing material in the Property, i.e., tipping fees.

DiFrancesco argues that the tipping fees generated by the post-petition landfill operation are included within the rents, issues, or profits clause and are therefore cash collateral under 11 U.S.C. § 363(a). The Debtor argues that the tipping fees do not constitute cash collateral, because the tipping fees are not derived from the rental of real property, nor are the fees profits or issues of the real property, but rather are derived from the service the Debtor provides thereon.

## Discussion

The issue before the Court is whether tipping fees received by a landfill operator/debtor constitute cash collateral.[2] Cash collateral includes the proceeds, offspring, rents, or profits of property subject to a security interest. 11 U.S.C. §§ 363(a) and 552(b).

If tipping fees which arise from post-petition landfill operations are rents, issues, or profits of property, they remain subject to the lien of the pre-petition mortgage, which contains a rents, issues, and profits clause, pursuant to 11 U.S.C. § 552(b). Accordingly, the tipping fees would be cash collateral and, therefore, the Debtor would not be entitled to the use of those fees in the absence of DiFrancesco's approval or Court authorization. If, on the other hand, the tipping fees are "accounts," as argued by the Debtor, or some other form of personal property, they would not be subject to the lien of the pre-petition mortgage, and the Debtor could use the fees without the approval of DiFrancesco or the Court. 11 U.S.C. § 552(a).

State law controls whether a creditor's interest in the income generated by Debtor's landfill operations is cash collateral. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). Accordingly, because the Property is located in Pennsylvania, the Court must determine whether under Pennsylvania law tipping fees are "rents" or "profits" of real property,[3] i.e. an interest in real property.

It should be noted that the terms "rents" and "profits," as used in the mortgage, are terms of art which do not apply generally to all business profits, but rather have more specialized meanings. *In re Majestic Motel Associates,* 131 B.R. 523, 525 (Bankr.D.Me. 1991). "Rents and profits does not include business profits arising out of the operation of the mortgaged premises not rented to others but occupied and used by the mortgagor." *Id. citing Detroit Trust Co. v. Detroit City Service Co.,* 262 Mich. 14, 42–43, 247 N.W. 76, 85 (1933).

Neither side, nor the Court's own research, has discovered any Pennsylvania state or bankruptcy decision which deals expressly with the characterization of tipping fees. DiFrancesco, the Debtor, and the Committee each rely on case law involving hotel/motel revenues in support of their respective positions, as to whether the tipping fees should be characterized as "rents."

The clear majority of these cases hold that revenues from hotel/motel room occupancy are personal property, accounts receivable, and not "rents." *See e.g., In re Ashoka Enterprises, Inc.,* 125 B.R. 845, 846 (Bankr. S.D.Fla.1990); *In re Shore Haven Motor*

---

mortgage containing the assignment. *Commerce Bank v. Mountain View Village, Inc.,* 5 F.3d 34, 39 (1993); *In re SeSide Co., Ltd.,* 152 B.R. 878, 885 (E.D.Pa.1993).

**2.** As set forth in 11 U.S.C. § 363,
(a) In this section, 'cash collateral' means cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest *and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title whether existing before or after the commencement of a case under this title.*

11 U.S.C. § 363(a) (West 1993) (emphasis added).

**3.** DiFrancesco does not appear to argue that the tipping fees are an "issue" of the Property, but instead maintains the tipping fees are profits or rents. The Court agrees with DiFrancesco that "issues are goods and profits of the land." *See Constanzo v. Harris,* 71 Wash.2d 254, 427 P.2d 963 (1967). To the extent DiFrancesco relies on the existence of "issues" in the mortgage's assignment clause, the Court finds that tipping fees are not an issue of the land. Issues, like profits discussed *infra,* is a common law term which is not applicable on these facts.

*Inn, Inc.,* 124 B.R. 617, 618 (Bankr.S.D.Fla. 1991); *In re Sacramento Mansion, Ltd.,* 117 B.R. 592, 606 (Bankr.D.Colo.1990); *In re Blue Ridge Motel Associates,* 106 B.R. 81, 82 n. 1 (Bankr.W.D.Pa.1989); *In re Greater Atlantic and Pacific Inv. Group, Inc.,* 88 B.R. 356, 359 (Bankr.N.D.Okla.1988); *In re Kearney Hotel Partners,* 92 B.R. 95, 99 (S.D.N.Y. 1988).

Many of these cases turn on the characterization of a hotel/motel guest as a mere licensee rather than a tenant. *See In re Sacramento Mansion,* 117 B.R. at 606; *In re Greater Atlantic,* 88 B.R. at 359; *In re Kearney Hotel Partners,* 92 B.R. at 99.

Under Pennsylvania law, the status of a tenant is significantly different from that of a licensee. Pursuant to a lease, a tenant pays his landlord "rent" in exchange for the right to possess and use land or premises of the landlord in subordination of the landlord's title. *In re Wilson's Estate,* 349 Pa. 646, 648, 37 A.2d 709, 710 (1944). A licensee, on the other hand, is generally considered to have a mere personal privilege to perform an act or series of acts on the land of another. *Kovach v. Gen. Tel. Co. of Pennsylvania,* 340 Pa.Super. 144, 148, 489 A.2d 883, 885 (1985) (citations omitted). Accordingly, a license is simply a permit or privilege to do what otherwise would be unlawful, while a lease empowers a tenant with the exclusive right of possession and use of the property for any legal purpose not prohibited by its terms.

■ In the instant case, the Court concludes that the tipping fees are business receipts derived from the Debtor's landfill operations, not "rents." It is apparently not disputed that the Debtor's customers transport their waste to the Property where it is weighed by the Debtor's employees prior to being dumped in the landfill. The Debtor's customers do not acquire a right to possess or use the Debtor's Property in subordination of the Debtor's title. Accordingly, the customers are clearly not tenants. The Debtor's customers are at best licensees, insofar as they are permitted to enter onto the property and dump material.

DiFrancesco argues alternatively that if the tipping fees are not "rents," they are "profits."

At common law, a "profit" is a

[r]ight exercised by one person in the soil of another, accompanied with participation in the profits of the soil thereof. *A right to take part of the soil or produce of the land.* A right to take from the soil, such as by logging, mining, drilling, etc. The taking (profit) is the distinguishing characteristic from an easement.

Black's Law Dictionary 1211 (6th ed. 1990) (emphasis added). A profit includes "the right of entry and the *right to remove and take from the land the designated products or profits.*" *Id.* (emphasis added). *See Costa Mesa Union School Dist. of Orange County v. Security First Nat'l Bank,* 254 Cal. App.2d 4, 11, 62 Cal.Rptr. 113, 118 (1967).

In support of its position, DiFrancesco cites *Beckwith v. Rossi,* 157 Me. 532, 534, 175 A.2d 732, 734 (1961) for the proposition that a "profit" is the right to take from the land of another a part of the soil, or something which is a product of the soil. DiFrancesco then cites *Constanzo v. Harris,* 71 Wash.2d 254, 427 P.2d 963 (1967) for the proposition that issues are goods and profits of the land.

The Court agrees with DiFrancesco that the term "profits," as used in *Constanzo* and *Beckwith,* means "products of the soil." In *Beckwith,* the product was gravel. *Constanzo* involved an action by a mortgagee to enforce its lien upon the proceeds of the sale of a hay crop and pasture rental.

Under Pennsylvania law, the term "profits" refers to products of the soil as well. For example, in *Grubb v. Rockey,* 366 Pa. 592, 79 A.2d 255 (1951), the Supreme Court of Pennsylvania interpreted a land sale contract to determine whether the purchaser or vendor of real property was entitled to a "profit" from the wheat crop growing on the property under contract. Similarly, in *Blair v. Shannon,* 349 Pa. 550, 37 A.2d 563 (1944), the Court determined the respective rights of various heirs of the deceased landowners to rents, issues, and profits derived from leasing and mining coal.

DiFrancesco's argument fails, however, with its leap to the conclusion that, because the "use of real property as a landfill forever changes the character of land and diminishes its value," the tipping fees are "profits." As discussed, "profits," under Pennsylvania law and at common law, is a term referring to

"products of the soil." Although landfill operations occur on land (soil), tipping fees are not derived from the extraction of a product of the soil, as in mining or drilling for oil, nor is anything harvested or taken from the land, as in farming or logging; tipping fees are generated in exchange for the privilege to enter onto the land and leave something behind. Moreover, the fees appear to be generated at least in some degree by labor and incidental services provided by the Debtor and sanctioned by appropriate agencies from whom the Debtor necessarily acquired permits. *See In re Green Corp.,* 154 B.R. 819, 825 (Bankr.D.Me.1993) (distinguishing *Beckwith* in the context of a hotel/motel case). On these facts, the Court is not able to conclude that tipping fees constitute "profits."

Because the Court has determined that the tipping fees represent income derived from the business operations of the Debtor, and that the tipping fees are personal property rather than an interest in real property, the tipping fees do not constitute cash collateral pursuant to 11 U.S.C. §§ 363(a) and 552(b). Accordingly, DiFrancesco's Motion to Prohibit the Use of Cash Collateral must be denied. An Order consistent with the foregoing will be entered.