### BENSON M. DIXON *vs.* FRANK FRIDETTE.

### Androscoggin. Opinion December 27, 1888.

*Verdict. Practice. Lien. Implied Promise.*

The plaintiff and his witnesses testified that the defendant agreed to cut all the wood on a certain lot, at a fixed rate per cord payable when all was cut and surveyed. The defendant and his choppers cut a portion of the wood, when the choppers sued the defendant for their wages and attached and sold the wood to secure their lien; the plaintiff paid the judgments and sued the defendant on an implied agreement to save him harmless from all liens. The defendant and his witnesses testified that he was to cut only such part of the wood as he chose and it was to be surveyed and paid for every two weeks. *Held,* that it was erroneous for the presiding justice to order a verdict for the plaintiff.

ON EXCEPTIONS. This was an action of assumpsit to recover money paid on lien judgments rendered in favor of laborers, against defendant and plaintiff's wood, and on which judgments the wood had been taken and sold. Plea, general issue.

After the evidence was closed, the case was submitted to the jury, on the charge of the presiding judge. The jury were unable to agree, and before separating the judge directed them to return a verdict for the plaintiff. To these instructions the defendant excepted.

*G. C. and C. E. Wing,* for defendant.

The case does not come within the rule laid down in *Heath* v. *Jaquith,* 68 Maine, 433. The evidence of the parties was conflicting. The jury should have been allowed to determine upon the evidence what the contract was. There was evidence that the plaintiff broke the contract. He was to survey and pay every two weeks for what wood was cut. If the plaintiff broke the contract he cannot maintain his action. How could he repudiate his agreement and hold defendant on an implied promise to hold him harmless from all liens thereon? Defendant had a right to stop cutting when plaintiff refused to pay, and could have maintained *quantum meruit* for the work actually done. *Mullaly* v. *Austin,* 97 Mass. 30.

*Savage and Oakes,* for plaintiff.

The circumstances in the case before the court are exactly similar, as to the action of the presiding justice, to those in *Heath* v. *Jaquith,* 68 Maine, 433, which is conclusive as to the power of the justice to order a verdict.

The only practical question arising then, is whether the evidence disclosed at the trial disclosed a legal defence.

Was it in the nature of a set-off? No brief statement was filed as the statute requires, and the case discloses no demand against the plaintiff sufficiently definite to be set off, if this line were open to the defense.

Is it in the nature of a recoupment? The law in regard to recoupment cannot apply here.

"To make it available it must appear that there is some stipulation in the contract sued which the plaintiff has violated. A defense by way of recoupment denies the plaintiff's cause of action to so large an amount as the plaintiff alleges he is entitled to. This can only be when the liability of both parties arises out of the same transaction, or from mutual and dependent agreements." *Winthrop Bank* v. *Jackson,* 67 Maine, 570; Waterman on Recoupment, §§ 465, 466; *Harrington* v. *Stratton,* 22 Pick. 510.

Here the cause of action is on an implied contract, the terms of which are fixed by law, and not by "mutual agreements."

This is the situation:—The defendant owed men for services in chopping wood, he neglected to pay, allowed himself to be sued, and the property of the plaintiff to be taken by process of law, to pay his, the defendant's debt.

We apprehend that the simple and only contract arising thereupon is that the defendant shall pay the plaintiff the sum he has had to pay out. It cannot matter, in this case, that some previous contract between the plaintiff and defendant had been broken by the plaintiff. That might be available to the defendant in a separate action, if he can make out his case, but surely not to cut down the verdict in this case.

If not a set-off or recoupment, does the defendant's case, giving the whole evidence its utmost weight on his side, show a legal excuse for the defendant which can free him from obligation on this promise implied by law?

We believe the mere statement of the question gives a sufficient answer.

Could the neglect of this plaintiff to fulfill his contract with the defendant, excuse the defendant from his contract with men he employed? And yet we cannot see but this must be assumed in order to make out this position for the defense.

VIRGIN, J. The plaintiff testified that the defendant took a job of him to cut all the wood on a certain lot, for eighty cents a cord, payable in "one lump" or round sum when all cut and surveyed by a sworn surveyor.

This special contract the plaintiff makes the foundation of an alleged implied promise, on the part of the defendant, to hold the plaintiff harmless from all lien claims or judgments on the wood for cutting it; and he brings this action, based upon that implied promise, to recover of the defendant the amount of six lien judgments in favor of the defendant's choppers and against the defendant and the wood chopped by them, which judgments the plaintiff paid, and thereupon contends that he paid them for the use of the defendant.

If the plaintiff's statement of the terms of the contract is correct and the defendant has performed a part of it only, and has

refused, without legal excuse and against the plaintiff's consent, to perform the rest of it, he could recover nothing either in general or special assumpsit. *Hulle* v. *Heightman*, 2 East, 145; *Dermot* v. *Jones*, 2 Wall. 1; *Faxon* v. *Mansfield*, 2 Mass. 147; *Rice* v. *Dwight Manf. Co.*, 2 Cush. 80, 87; *Otis* v. *Ford*, 54 Maine, 104; *Lakeman* v. *Pollard*, 43 Maine, 463. If he could not sue then of course he could not put any lien upon the wood.

The defendant, however, strikes at the very foundation of the plaintiff's action by testifying that the terms of the special contract were not, so far as the quantity of wood to be cut and the time of payment therefor are concerned, such as stated by the plaintiff; but, on the contrary, that he was not obliged to cut all the wood on the lot, but only so much thereof as he might choose; and that he was to receive eighty cents a cord for whatever he should in fact cut, and the survey and payment were to keep pace with the cutting *toties quoties* every two weeks.

If the defendant's version of the special contract as to the times of survey and payment, is correct, and the plaintiff absolutely refused to perform his · part of it in this respect, thereupon the defendant would have the legal right to elect to rescind it and sue on a *quantum meruit* for the wood cut under it, prior to the rescision. *Withers* v. *Reynolds*, 2 B. & Ad. 882; *Planche* v. *Colburn*, 8 Bingham, 14; *Pritchett* v. *Badger*, 1 C. B. (N. S.) 296; *Dwinel* v. *Howard*, 30 Maine, 258; *Wright* v. *Haskell*, 45 Maine, 489.

In *Withers* v. *Reynolds*, *supra*, the defendant agreed to deliver to the plaintiff three loads of straw a fortnight during a specified time, at thirty-three shillings a load on delivery. After the receipt of several loads the plaintiff refused to pay on delivery, contending that he was to pay when all was delivered. On the defendant's refusing to deliver any more, the plaintiff sued him for breach of the contract, and Lord Tenterden, C. J., and his associates sustained a nonsuit, on the ground that the defendant was entitled to his pay on the delivery of each load, and that the plaintiff's absolute refusal gave the defendant the right to rescind. Patterson, J., remarked that if the plaintiff "had merely failed to pay for any particular load, that of itself might not have been an

excuse for delivering no more, but the plaintiff refused to pay for the loads as delivered." That case was cited in *Franklin* v. *Miller*, 4 A. & E. 599, and in pronouncing his opinion, Coleridge, J.,· said: "In *Withers* v. *Reynolds*, each load of straw was to be paid for on delivery. When the plaintiff said that he would not pay for the loads on delivery, that was a total failure, and the defendant was no longer·bound to deliver. In such a case it may be taken that the party refusing has abandoned the contract."

Assuming that the law would raise an implied promise on the part of the defendant to hold the plaintiff harmless from all liens on the wood, provided the plaintiff's understanding of the special contract is right, such a promise could not be implied unless the plaintiff fulfilled on his part by paying as he agreed. Otherwise the defendant might lose all remedy for his earnings. And if he refused absolutely to pay bi-weekly, if such were the contract, he would thereby put it in the power of the defendant to rescind the special contract; and when rescinded, the parties would be in the same condition as if no such contract had been made; whereupon all the choppers might secure their wages on the wood.

Furthermore, the defendant and his witnesses to the contract, judging from their names and the language of their testimony, are Frenchmen. And the minds of the parties, on account of the defendant's imperfect knowledge of the English language, may not have met on the terms of the contract. If their testimony is true, they could not have understood the contract alike. If that should prove to be the fact, then there was no such contract ever entered into, and hence no implied promise on which to ground the plaintiff's action.

Under either aspect of the case, therefore, our opinion is, it should have been submitted to a jury to settle the facts; and the order directing a verdict for the plaintiff was erroneous.

*Exceptions sustained.*

PETERS, C. J., WALTON, DANFORTH, EMERY AND HASKELL, JJ., concurred.