THOMAS A. COOPER, BANK EXAMINER, IN EQUITY,

*vs.*

CASCO MERCANTILE TRUST CO.

PETITION OF TRUSTEES OF PREBLE CORPORATION

FOR DETERMINATION OF CLAIM.

Cumberland.     Opinion, September 8, 1936.

*Ralph O. Brewster,*
*Edgar B. Simpson,* for petitioner.
*Leon V. Walker,*
*Richard K. Gould,* for conservator.

SITTING: DUNN, C. J., STURGIS, BARNES, THAXTER, HUDSON, MANSER, JJ.

MANSER, J.   On report. The Preble Corporation as petitioner in these proceedings seeks to establish a claim for damages sustained by it, alleged to be by reason of breach of rental covenant under its lease of banking rooms in the Chapman Building in Portland. The petitioner was the lessor and the lease was granted originally to the Chapman National Bank and later assumed by the Casco Mercantile Trust Company. Some other questions are raised by the pleadings, not dependent for determination upon the principal issue involved, and under the final stipulation of the parties

and the order of Court for report of the case, these become non-essential of extended consideration.

The lease, and a separate written agreement, incorporated by reference, together provided for a term of thirty years from July 1, 1924. The rent reserved was $21,500 per annum for the first five years, $26,500 for the second five years, $31,500 for the third period of five years, and for the remaining fifteen years an amount to be determined by mutual agreement or arbitration.

The Casco Mercantile Trust Company, hereinafter for convenience referred to as the Bank, took possession on October 1, 1930, and assumed the obligations of the original lessee. It paid the stipulated rental to March 31, 1933, and occupied the premises until March 18, 1933. On the latter date, by order of the Supreme Judicial Court, a temporary conservator for the Bank was appointed, who on April 14, 1933, became permanent conservator by further order. The appointment was made under authority of the Emergency Banking Act, P. L. 1933, Chap. 93, and the conservator had all the rights, powers and privileges of receivers of banks and trust companies. (Sec. 4 of the Act.) The conservator upon his appointment occupied the premises, but on March 31, 1933, notified the petitioner that such occupancy was not to be considered as an affirmance or disaffirmance of the terms of the lease, and on June 30, 1933, further informed the petitioner that, as it was then apparent the lease would not be an asset for the creditors of the Bank, he intended to vacate. On July 31, 1933, the conservator, acting under an order of Court, did so vacate the premises and abandoned the lease. The petitioner relet the premises and from August 1, 1933, they have been occupied, for four months by a committee engaged in organizing a new bank and from December 1, 1933, by the bank so organized. A lease was given to the new bank for two years with option of renewal for three years, and the rental provided was at a greatly reduced rate.

The petitoner, by letter of July 31, 1933, acknowledged notice of abandonment by the conservator and agreed that he should not be liable for further use and occupancy, but such acknowledgment and agreement were stated to be without prejudice to the claim for damages against the Bank for breach of the lease.

The brief for the petitioner states its contention thus: The ap-

pointment of a conservator to wind up the Bank and the subsequent abandonment of the lease and vacation of the premises by the conservator under authority of the Court is a breach of the executory contract of the Bank, and the petitioner is entitled to prove its damages for breach of the rent covenant, measured by the difference between the rental value of the premises for the remainder of the term and the present worth of the rent reserved in the lease.

The precise question has not heretofore been considered by our Court but numerous cases involving similar situations have been adjudicated in both state and federal courts, and there is a wealth of judicial reasoning upon the subject. A review of the opinions in these cases makes it seem advisable to point out certain distinctions in factual conditions arising therein, as results apparently conflicting may thus often be reconciled.

At the outset it is to be noted that some attention is given in the decided cases to the effect of receivership of the lessee, and as the conservator here is endowed with the rights and duties of a receiver, the terminology is applicable.

The lease was in force when the receiver was appointed on March 18, 1933. There had been no default in payment of rent. It had been paid in advance to the end of the current month.

There is no provision in the indenture which provided for its termination in event of bankruptcy or receivership, either automatically or at the election of the lessor. Neither was there any contract or covenant that in such event or on such abandonment by the receiver the lease should be terminated and the lessor be entitled to a penalty, or damages, either liquidated or based upon a rule of computation therein adopted.

The only provision in the lease relating to cancellation was the usual and ordinary one that the lessor might enter "to expel the Lessee if it shall fail to pay the rent aforesaid, whether said rent be demanded or not, if it shall make or suffer any strip or waste thereof, or shall fail to quit and surrender the premises to the Lessor at the end of said term, in manner aforesaid, or shall violate any of the covenants of this lease by said Lessee to be performed."

In the absence of a contract or covenant provision in the lease, the determination is affected in some jurisdictions by consideration

of a statute in force in the particular state, which, however, is without influence in the present case, as there is no legislative enactment in this State which is operative upon the situation.

Again, cases of this character arising in bankruptcy have sometimes been considered and decided by Federal Courts with direct reference to the provability of such claims in view of their contingent character. These cases, with the effect of changes in the Bankruptcy Act, are reviewed at length in the recent case of *Manhattan Properties, Inc.* v. *Irving Trust Co.*, 291 U. S., 320, 54 S. Ct., 385, in an opinion by Justice Roberts.

With this preliminary presentation we find that in the consideration of the issues as presented by the petitioner it must be kept in mind that the lease was in full force and effect when the conservator was appointed; that officer seasonably and by order of Court declined to assume it as an obligation of the estate under his charge; the lease contained no provsiion for cancellation, and no contract or covenant for penalty or damages in event of receivership; no statute creating such liability exists in this State, and the issue is not affected by any Bankruptcy Act relating to provability of the claim.

Thus narrowed, the issue is presented of whether under the principles of the common law there is an allowable claim.

The facts show that a substantial actual and expectant loss has resulted to the petitioner. Was there a breach of the covenant of the lease which creates a claim? If so, do damages flow as a matter of law from such breach? Is it such loss as entitles the petitioner to prove its claim as an unsecured creditor against the assets of the lessee in the hands of the conservator?

There is no doubt that a covenant to pay rent for leased premises constitutes an executory contract. It is to pay sums of money as rent accruing at stated times in the future.

Ordinarily a breach of an executory contract gives rise to an action for anticipated damages. This doctrine is applied uniformly to contracts concerning personalty. Many cases have upheld the principle. They are cited by the petitioner as supporting and controlling the contention in the instant case.

Illustrative decisions in Maine are *Sibley* v. *Rider*, 54 Me., 463; *Fales* v. *Hemenway*, 64 Me., 373; *Crooker* v. *Holmes*, 65 Me., 195;

*Sutherland* v. *Wyer*, 67 Me., 64; *Dixon* v. *Fridette*, 81 Me., 122, 16 A., 412; *Alie* v. *Nadeau*, 93 Me., 282, 44 A., 891; *Brackett* v. *Knowlton*, 109 Me., 43, 82 A., 436; *Eugley* v. *Sproul*, 115 Me., 463, 99 A., 443.

And so in Massachusetts: *Amos* v. *Oakley*, 131 Mass., 413; *Parker* v. *Russell*, 133 Mass., 74; *Foternick* v. *Watson*, 184 Mass., 187, 68 N. E., 215. See also *Central Trust Co.* v. *Chicago Auditorium*, 240 U. S., 581.

None of these cases were concerned with the breach of a covenant to pay rent, and this distinction is important. It is clearly and aptly stated in an article in 46 Harvard Law Review, 1117:

> "For reasons grounded in the history of our land law, it is necessary to distinguish between the affirmative rights of a contract creditor and those of a lessor on rejection by a receiver. From an early date a covenant to pay rent has been treated differently from contracts generally. In the early common law, a rent covenant did not give rise to a present obligation (even contingent) to render performance in the future, as did, for example, a promise to pay in instalments for goods purchased. No obligation was held to exist until the rent day. Furthermore, if the tenant failed to pay rent when it accrued, his failure did not accelerate the rent in the absence of a provision in the lease to that effect. If a right of entry was reserved and the lessor entered, his only right against the lessee was for payment of the rent which had accrued prior to entry. There was no doctrine in the common law to the effect that a material breach of a lease would give rise to a cause of action for breach of the entire lease, and there was, *a fortiori*, no doctrine of anticipatory breach of a lease.
>
> These early common-law rules have left a definite mark on our modern law, and (although it is not free from doubt) are probably enforced today in a majority of common-law jurisdictions. When a receiver rejects a lease providing for entry and termination upon certain defaults, the lessor may, upon such a default, enter and terminate. While he has then been allowed to prove for all rent which accrued prior to entry, he cannot prove for rent accruing thereafter. Similarly, except

where the land law gives to the lessor a cause of action for a material breach (either actual or anticipatory) of the lease, a claim for damages arising from a receiver's rejection cannot be proved."

From the time these early rules were established there have been numerous decisions which refer to, and in most instances are grounded upon, the principles above stated, and go back to Lord Coke in his comment on Littleton, 292b, that the rights of the parties under a contract relating to personalty and one relating to realty are different, because of "the diversity between duties which touch the realty and the mere personalty."

The Massachusetts case of *Bordman* v. *Osborn*, 23 Pick., 295, puts the distinction and diversity in this wise:

"Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land, and is supposed to come out of the profits of the estate. The actual enjoyment of the land is the consideration for the rent which is to be paid, and, therefore, if the lessee is evicted before the rent becomes due, in whole or in part, it is a good answer to a claim for rent, by an action of debt or covenant, or by distress. 1 Saunders, 204, note. From this it seems clear, that although there be a lease, which may result in a claim for rent, which will constitute a debt, yet no debt accrues until such enjoyment has been had; because, says Lord Coke, in discussing the effect of a release, a debt is merely a thing in action, and, therefore, if a man be bound to the payment of a debt, at a future time, a release of all actions by the obligee, is a perpetual bar, for 'albeit no action lyeth for the debt, because it is *debitum in presenti, quamvis sit solvendum in futuro*, yet because the right of action is in him, the release of all actions is a discharge of the debt itself.' Co. Lit. 292b."

In 1910 the Circuit Court of Appeals for the Second Circuit, *In re Roth & Appel*, 181 Fed. Rep., 667, amplifies the rule and its reasons thus:

"Rent is a sum stipulated to be paid for the use and enjoyment of land. The occupation of the land is the consideration

for the rent. If the right to occupy terminate, the obligation to pay ceases. Consequently, a covenant to pay rent creates no debt until the time stipulated for the payment arrives. The lessee may be evicted by title paramount or by acts of the lessor. The destruction or disrepair of the premises may, according to certain statutory provisions, justify the lessee in abandoning them. The lessee may quit the premises with the lessor's consent. The lessee may assign his term with the approval of the lessor, so as to relieve himself from further obligation upon the lease. In all these cases the lessee is discharged from his covenant to pay rent. The time for payment never arrives. The rent never becomes due. It is not a case of *debitum in presenti solvendum in futuro*. On the contrary, the obligation upon the rent covenant is altogether contingent. *Watson* v. *Merrill*, 136 Fed., 362, 69 C. C. A., 185, 69 L. R. A., 719. See also, Coke on Littleton, 292b; *Wood* v. *Partridge*, 11 Mass., 492; *Bordman* v. *Osborn*, 23 Pick. (Mass.), 299."

So in *Watson* v. *Merrill*, cited supra, the Court said:

"The use and occupation of the premises during the term of the lease were the consideration for the payment of the monthly rents, and the payment of the rents was the consideration for the use of the premises. If the rent for any month was not paid, or if waste was permitted, the lessor had the option to reposses himself of the premises, and to withhold from thenceforth the consideration for future installments of rent, or to permit the lessee to continue in possession of the property, and to enforce the collection of the rents by an action or by some other proceeding. He could not, however, do both."

This inherent character of rent is accepted and adopted by the courts in most jurisdictions. It is not controverted in the brief for the petitioner. In fact, there is express disavowal that future rent is the basis of the claim.

Many instances arose of evident inability of the lessee to pay rent accruing in the future, and where the right to repossess and

relet the premises, if exercised, would result in financial loss, due to the lessened rentals obtainable. It was then sought to have the doctrine of anticipated damages, already adopted by the courts in contracts concerning personalty, applied to contracts for the use of land. The courts, however, generally declined to make such application, and to accomplish the result resort was had to the introduction into leases of provisions having that effect. Such stipulations in leases are discussed in *Re McAllister-Mohler Co.*, 46 Fed. (2d) 91; *Liggett Co.* v. *Wilson*, 224 Mass., 456, 113 N. E., 184; *Woodbury* v. *Sparrell*, 187 Mass., 426, 73 N. E., 547; *Cotting* v. *Hooper, Lewis & Co.*, 220 Mass., 273, 107 N. E., 931; *Gardiner* v. *Parsons*, 224 Mass., 347, 112 N. E., 958. Such stipulation also throws light upon the decision in *Reading Iron Works*, 150 Penn. St., 369, 24 A., 617, and is the determining factor in the decisions of Justice Holmes in *Filene* v. *Weed*, 245 U. S., 597, and the accompanying case of *Gardiner* v. *Butler*, 245 U. S., 603. As noted in this opinion, no such provisions were incorporated in the lease under consideration.

The petitioner further urges that the appointment of a conservator for the Bank is equivalent to a decree for its dissolution, terminated its contractual relations and effected a cancellation of the lease; and having sustained loss thereby, it should not be relegated to its rights against a defunct corporation, but should be entitled to share in the distribution of its assets.

Even if this were true, there is authority for the proposition that where the lessee corporation is dissolved, the claim for future rent or for damages for its non-payment may not be allowed. *Fidelity Co.* v. *Armstrong*, 35 Fed., 567.

There are a few decisions where courts have recognized the right to prove such a claim against the estate of the lessee in the hands of a receiver, on the ground of dissolution of the lessee corporation. The principal one is *Kalkhoff* v. *Nelson*, 60 Minn., 284, 62 N. W., 332. In that case, however, the Court construed the statute under which the receiver was appointed as entirely different from the former insolvency law and as providing for dissolution.

In *Steenrod* v. *Gross Co.*, 334 Ill., 362, 166 N. E., 82, it was held that the appointment of a receiver to take possession of the assets

of a corporation and distribute them was tantamount to dissolving the corporation.

By the great weight of authority, "The appointment of a receiver for a corporation is a suspension of its functions and authority over its property and effects." "The appointment of a receiver does not, however, work a dissolution of the corporation." "This doctrine applies to the appointment of a permanent receiver." 23 R. C. L., Receivers, 46, and cases cited.

Moreover, these proceedings are under P. L., 1933, Chap. 93, the provisions of which negative such a contention. Sec. 1, provides that "Whenever, in the opinion of a majority of the directors or the executive committee of any trust company organized under the laws of the State of Maine and the bank commissioner, it will be for the benefit of the depositors and the public for the assets of the trust company to be revalued, the bank reorganized and put in sound condition, any Justice of the Supreme Judicial Court shall . . . issue decrees necessary to carry out the provisions of this act." Sec. 4 provides for the appointment of conservators, and "Such conservatorships may be terminated at any time by order of the court." By Sec. 6, "The court may order the merger or consolidation of said trust company with any other banking institution, State or Federal, with the consent of said latter banking institution."

It is clear that the appointment of a conservator under this Act is not equivalent to an order of dissolution. This ruling is not inconsistent with the *Newport Savings Bank* case, 68 Me., 396, relied upon by the petitioner. There the Court, passing on the provisions of the statute relating to insolvent savings banks and the authority given to reduce or scale down savings deposits, said: "The bank is insolvent. It comes into court and asks for the privilege granted in this section. *But for its provisions* the court must pass a decree of sequestration, and cause its affairs to be wound up, and it would *then* cease to exist as a corporation." In other words, the intent of the statutory provision there construed was to keep the bank alive and not to dissolve it. So here.

On the other hand, the statute upon which the decision in *Jones* v. *Winthrop Savings Bank*, 66 Me., 242, was based was of an en-

tirely different character. Its purpose was for dissolution and distribution of assets. The statement of the Court that "No debt can accrue against the bank after the decree of sequestration. This is the end of its existence," must be read in the light of the statute (R. S. 1871, Chap. 47, Sec. 99), which authorized trustees or depositors of an insolvent savings institution to file a bill in equity "praying for a sequestration and an equitable distribution of its assets."

As pointed out in the recent case of *Cooper* v. *Fidelity Trust Co.*, 132 Me., 260, 170 A., 726, 728, the conservator "takes no title to the property or assets and receives his authority to act solely from the Court."

We adopt, as applicable to a receivership in this connection, the principles stated by our Court with respect to bankruptcy in *Holding Company* v. *Bangor Veritas*, 131 Me., 421, 163 A., 655, 656.

> "It is well settled that upon the bankruptcy of the tenant, provided that by the terms of the lease the tenancy is not thereby terminated, the leasehold interest of the bankrupt passes to the trustee, if he elects to accept it, as an asset of the estate to be reduced into money by assignment or otherwise for distribution among the creditors. (Cases cited.)
>
> "It is equally well settled that, if the Trustee does not accept the property of the bankrupt as an asset of his estate within a reasonable time, he is deemed to have elected to reject it, and the title to the asset, whatever it is, remains in the bankrupt. A lease is not terminated by the adjudication in bankruptcy of the tenant unless there be provision to that effect in the indenture, and, if the Trustee renounces the lease, the relations of landlord and tenant between the bankrupt and his lessor are not disturbed, the bankrupt retaining 'the term on precisely the same footing as before, with the right to occupy and the obligation to pay rent.' *In re Roth*, 181 Fed. Rep., 667 ; *In re Scruggs*, 205 Fed. Rep., 673 ; *In re Sherwoods, Inc.*, 210 Fed. Rep. 754 ; *English* v. *Richardson*, 80 N. H., 364, 117 A., 287."

We subscribe to the common-law doctrine enunciated by many courts with the underlying reasons therefor, and hold that no claim

for anticipated damages arises on breach of covenant for rent of real estate in the absence of a provision in the lease to that effect. Indeed, there was no breach of such covenant in the lease in question at the time of the appointment of the conservator.

*A fortiori,* no claim exists against the assets in the hands of the conservator. He is a ministerial officer of the court. His appointment did not dissolve the corporation or terminate the lease. The order of the court directing him to abandon it created no liability against the estate in his charge.

One further matter was submitted by the report. This is the claim of the petitioner for use and occupation of the premises by the conservator from March 18 to July 31, 1933. The answer admits liability, but asserts the right of set-off. Under the terms of the stipulation and report, the cause is remanded for determination of the amount of this particular claim only and the right of the conservator to set-off.

*So ordered.*