**In re MAJESTIC MOTEL ASSOCIATES, Debtor.**

**In re MEADOWLEDGE ASSOCIATES, Debtor.**

**In re DN ASSOCIATES, Debtor.**

**In re MIDWAY MOTEL PARTNERS, Debtor.**

**Bankruptcy Nos. 91–20420, 91–20419, 91–20417 and 91–20418.**

United States Bankruptcy Court, D. Maine.

Sept. 20, 1991.

Robert J. Keach, Verrill & Dana, Portland, Me., for Casco Bank.

Leonard Gulino, Preti, Flaherty, Beliveau & Pachios, Portland, Me., for Meadowledge Associates.

James D. Poliquin, Norman, Hanson & Detroy, Portland, Me., for Majestic Motel

Associates, DN Associates and Midway Motel Partners.

## MEMORANDUM OF DECISION

JAMES A. GOODMAN, Chief Judge.

This controversy concerns the relationship of Casco Northern Bank, N.A. ("Bank") with four debtors—Majestic Motel Associates, DN Associates, Midway Motel Partners and Meadowledge Associates (collectively, the "Debtors"). Each debtor is a single-asset real estate limited partnership operating a seasonal motel or campground in Wells or Wells Beach, Maine. In dispute are the receipts for the use of motel rooms or campsites which constitute the principal source of income for each Debtor.

This matter is before the court upon the motion by the Bank for an order limiting the use of cash collateral by the Debtors, together with Debtors' motion to use the same. Interim orders authorizing the limited use of cash collateral, while providing adequate protection for the Bank, have been entered pending this decision.

## FACTS

The material facts, which are undisputed, are taken from the parties' Consolidated Joint Statement of Facts, together with exhibits. The Bank's relationship with each Debtor varies slightly in the amounts of money lent and the documentation evidencing each loan, but each gives rise to the same legal issue.

### Majestic Associates

On November 24, 1986, Majestic Associates executed and delivered to the Bank two promissory notes, along with a Mortgage and Security Agreement ("Majestic Agreement") in favor of the Bank.

The Majestic Agreement provides, in relevant part:

Mortgagor ... does hereby give, grant, bargain, sell, assign and convey unto ... Mortgagee ... the real estate described on Schedule A ... (the "Premises"). There is also hereby conveyed and assigned, as part of the Premises, the following described personal property:

All personal property of Mortgagor situated on or affixed to the Premises, ... all replacements of and additions to said property and all similar property now owned or hereafter acquired by Mortgagor, together with cash and non-cash proceeds of all of the foregoing, ... but excepting inventory and other personal property used, consumed or sold in the ordinary course of Mortgagor's business ...

As further security for payment of the Note and performance of the obligations, covenants and agreements secured hereby, Mortgagor hereby transfers, sets over and assigns to Mortgagee:

a. All rents, profits, revenues, royalties, bonuses, rights and benefits under any and all leases or tenancies now existing or hereafter created of the Premises or any part thereof with the right to receive and apply the same to the indebtedness secured hereby, ... provided, however, that so long as Mortgagor is not in default hereunder the right to receive and retain such rents, issues and profits is reserved to Mortgagor.

### DN Associates

DN Associates has a total of eight loans outstanding with the Bank: two non-recourse notes, three promissory notes and three lines of credit. A Mortgage and Security Agreement ("DN Agreement"), as modified by the First Amendment, has been executed as security for the first seven loans. This DN Agreement contains similar language to the Majestic Agreement. Additional security was provided by the execution of a Collateral Assignment of Leases and Rentals. The pertinent terms of this document are as follows:

[T]he Assignor ... assigns to the Assignee ... [t]he entire interest of the Assignor in and to any and all leases or tenancies of those premises, or any portion thereof, ... more particularly described in Schedule A attached hereto, all whether now existing or hereafter arising, ... Together with all rents, income and profits arising from said leases and tenancies

and together with all rents, income and profits for the use and occupation of the premises described in said leases upon said premises which may be executed or tenancies which may arise in the future and during the term of this assignment.

Finally, a Junior Mortgage, Security Agreement and Financing Statement was executed and delivered as security for the eighth loan, which was not previously covered by the original documents.

*Midway Motel Partners*

On October 31, 1986, Midway Motel Partners executed and delivered a note to the Bank with two additional notes and a Line of Credit Agreement executed on October 4, 1990. On that later date, Debtor also executed and delivered a Mortgage Deed, Security Agreement, and Financing Statement; a Collateral Assignment of Leases and Rentals; a Collateral Assignment of Declarant's Rights; a Loan and Security Agreement; and a Conditional Assignment of Licenses, Permits and Approvals. Again, the language of these various agreements is consistent with the previously quoted documents.

*Meadowledge Associates*

Meadowledge Associates has two promissory notes outstanding with the Bank. Both notes were executed on October 4, 1990 and are secured by a myriad of security agreements almost identical to those of Midway Motel Partners.

The fact that Meadowledge operates a campground rather than a motel is not a point of distinction. The Debtor asserts, and the Bank has conceded, that the revenues generated thereby are similar in nature to those derived from the operation of a motel.

With respect to all four Debtors, on March 7, 1991 the Bank declared a default and made a written demand for payment of the full sums due under all respective loan agreements. The Debtors each filed a petition for reorganization under Title 11 U.S.C. Chapter 11 on April 19, 1991, and

are currently operating as debtors-in-possession.[1]

## DISCUSSION

■ The issue of whether a party has a security interest in a debtor's property is determined by state law. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). It is undisputed here that Maine law is the applicable law.

It is clear in this case, as in *In re Somero,* 122 B.R. 634 (Bankr.D.Me.1991), that the mortgagee has a perfected security interest in the Debtors' rents and profits. This case, however, differs from *Somero* because the revenues available are not "rents and profits" within the meaning of Maine law.

■ The terms "rents" and "profits," as used in the security agreement, are terms of art which do not apply generally to all business profits, but rather have more specialized meanings. Both terms specifically describe interests in real property.

■ Clearly, the term "rent" is associated with payments on behalf of a tenant for his interest in real property. "Rent is a sum stipulated to be paid for the actual use and enjoyment of another's land." *Cooper v. Casco Mercantile Trust Co.,* 134 Me. 372, 378, 186 A. 885 (1936).

Furthermore, the term "rents and profits," as applied to real estate, means the income yielded by the property itself. "Under the common law, the word 'profits,' when used in conjunction with rents, meant the usufruct of the land ... Under the term profits is comprehended the produce of the soil, whether it arise above or below the surface ... [Rents and profits does not include] business profits arising out of the operation of the mortgaged premises not rented to others but occupied and used by the mortgagor." *Detroit Trust Co. v. Detroit City Service Co.,* 262 Mich. 14, 42–43, 247 N.W. 76, 85 (1933). *See also In re Liebe,* 41 B.R. 965, 969 (Bankr.N.D.Iowa 1984) (Basically, rents and profits are syn-

---

1. The Court has intentionally omitted from these facts information concerning the recordings of the various transactions in the appropri-

ate indices. These facts are unnecessary to a decision in this case.

onymous terms and include all products or income generated by use and cultivation of the land.); *Equitable Life Ins. Co. v. Brown*, 220 Iowa 585, 590, 262 N.W. 124, 127 (1935) (The phrase "rents, issues and profits" as distinguished from the land itself refers to the products of the land).

In fact, the primary case cited by the Bank in support of its position recognizes this definition of "profits." In *In re Mid-City Hotel Associates*, 114 B.R. 634 (Bankr.D.Minn.1990), the court referred to Black's Law Dictionary to establish that "profits" were an interest in real property.

This conclusion is further bolstered by the language of Title 11 U.S.C. § 552(b), pursuant to which the Bank claims its right to prohibit the Debtors' use of the hotel receipts. The section allows a pre-petition security interest to extend to "proceeds, product, offspring, rents or profits *of such property*" which is also subject to the security agreement. Here, the underlying real estate is the collateral for the mortgage. Thus, only "proceeds, product, offspring, rents or profits" of the underlying real estate, not the hotel business, may be the subject of § 552(b).

Here, the subject hotel revenues are not "rents" or "profits" derived from the real property itself, but are generated in large part by the labor and incidental services which the hotel business necessarily furnishes to its guests. A hotel guest does not obtain an interest in the underlying real property but is a mere licensee with a personal right to use the premises. *See, In re Sacramento Mansion, Ltd.*, 117 B.R. 592 (Bankr.D.Colo.1990).

## CONCLUSION

The hotel revenues are not subject to the Bank's security interest because they are not considered "rents and profits" under state law. Therefore, they are not "cash collateral," as defined in Title 11 U.S.C. § 363(a). Accordingly, the Bank's motion is denied and the Debtors' motion is dismissed as unnecessary.

The foregoing constitutes findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.