**In re CHURCHILL PROPERTIES VIII LIMITED PARTNERSHIP, an Illinois limited partnership, Debtor.**

**Bankruptcy No. 93 B 51640.**

United States Bankruptcy Court, N.D. Illinois, W.D.

Jan. 10, 1994.

Alan P. Solow and Randall L. Klein, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Chicago, IL, for Chequers Inv. Associates II.

Keith J. Shapiro and James T. Markus, Holleb & Coff, Chicago, IL, for debtor Churchill Properties VIII Ltd. Partnership.

### MEMORANDUM OPINION

RICHARD N. DeGUNTHER, Bankruptcy Judge.

This matter comes before the Court on the "Joint Cross–Motion for Partial Summary Judgment on the Amended Motion of Chequers Investment Associates II for Relief from the Automatic Stay and for Other Relief." The Debtor, Churchill Properties VIII Limited Partnership, an Illinois limited partnership (Churchill), is represented by Attor-

neys Keith Shapiro and James T. Marcus. Chequers Investment Associates II, a Texas general partnership (Chequers), is represented by Attorneys Alan P. Solow and Randall L. Klein.

Counsel have submitted two "issues ripe for partial summary judgment." The first has been commonly described as the "Post–Petition Revenues" issue, and the second as the "Executory Contract" issue. Counsel have requested a swift resolution of these two key issues so that the case may proceed on a relatively fast track. Counsel's request is hereby granted.

### 1. The "Post–Petition Revenues" Issue

■ Section 552(a) of the Code addresses the post-petition effect of a security interest. That section provides as follows:

> Except as provided in subsection (b) of this section, property acquired by the estate or by the debtor after the commencement of the case is not subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case.

11 U.S.C. § 552(a). Thus, the general rule is that property acquired by the debtor after the commencement of the case will not be subject to a lien arising from a pre-petition security agreement. However, there is an exception to this rule, and it is embodied by subsection (b), which provides that if the security agreement extends to ". . . proceeds, product, offspring, rents, or profits of such property," the creditor will retain a lien on that revenue "to the extent provided by the security agreement and by applicable non-bankruptcy law." 11 U.S.C. § 552(b). As a preliminary matter, the Court looks to state law to determine the validity of a post-petition security interest. *Butner v. United States,* 440 U.S. 48, 54–55, 99 S.Ct. 914, 917–918, 59 L.Ed.2d 136 (1979). Questions involving applicable non-bankruptcy law take into account whether the creditor has properly perfected its security interest under state law. *4 Collier on Bankruptcy,* § 552.02 at 552–8 (15th ed. 1993). Unfortunately, the distinction between after-acquired property and the exceptions outlined in subsection (b) is not always clear.

■ Here, the issue is whether the revenue generated from the hotel rooms is after-acquired property and thus not subject to the lien created by the security agreement, or whether it falls within the definition of "proceeds, product, offspring, rents or profits." Put more simply, are the hotel revenues "rents" or are they "accounts"? Counsel are to be commended for their submission of thoughtfully considered and thorough briefs in aid of this Court's analysis. The cited cases provide an unusually diverse treatment of the issue. Indeed, the totality of case law on this issue might be described as an unfathomable quagmire. If you don't believe it, read on.

There are cases which hold that hotel revenues are more appropriately characterized as "accounts", focusing on the nature of the relationship between the hotel and guest versus that of the tenant and landlord. *See In re Shore Haven Motor Inn, Inc.,* 124 B.R. 617 (Bankr.S.D.Fla.1991) (where the court distinguished between the interest of a lessee who possesses an estate in land and a hotel guest who possesses only a license and does not have an interest in the realty); *In re Corpus Christi Hotel Partners, Ltd.,* 133 B.R. 850 (Bankr.S.D.Tex.1991) ("The general rule is that a tenant is vested with an estate in property while a hotel guest is not"); *In re Greater Atlantic and Pacific Inv. Group,* 88 B.R. 356 (Bankr.N.D.Okla.1988) ("Payments by motel guests resemble payments under contract or an account much more nearly than lease payments of 'rent' "); *In re General Associated Investors Ltd. Partnership,* 150 B.R. 756 (Bankr.D.Ariz.1993) (court held that a hotel guest has a personal property interest rather than a real property interest; thus the hotel revenues are a personal property interest); *In re Ashoka Enterprises, Inc.,* 125 B.R. 845 (Bankr.S.D.Fla.1990) (court held hotel room revenues are accounts receivable and subject to perfection only by filing a financing statement in accordance with Article 9 of the U.C.C.).

On the other hand, some courts have held that hotel room revenues do constitute rents and therefore are covered under the pre-petition security agreement. Thus, these funds are cash collateral which the debtor

may not use without the consent of the creditor or an order of the bankruptcy court. 11 U.S.C. § 363(a); 11 U.S.C. § 363(c)(2). *See In re S.F. Drake Hotel Associates,* 131 B.R. 156 (Bankr.N.D.Cal.1991), *aff'd* 147 B.R. 538 (Bankr.N.D.Cal.1992). ("There is logical appeal in the suggestion that revenue generated from occupancy of real property, for residential use, is rent. Why should the length of the stay—a day, a week, a month, a year—determine the validity of the parties' security agreement?"); *Everett Home Town Ltd. Partnership,* 146 B.R. 453 (Bankr.D.Ariz. 1992) (The court cited Webster's definition of rent as "a usually fixed periodical return made by a tenant or occupant of property" and concluded that the plain meaning of "rents" in Section 552(b) would include payments from hotel/suite occupants who would not constitute "tenants" as that term is defined by various state statutes).

Other courts have held that although hotel room revenues may not be "rents", they may be subject to the pre-petition lien as "profits." *See In re Mid–City Hotel Associates,* 114 B.R. 634, 641 (Bankr.D.Minn.1990); *In re Miami Center Associates, Ltd.,* 144 B.R. 937, 941 (Bankr.S.D.Fla.1992) (The court held that the characterization of hotel revenue as accounts receivable rather than rents did not preclude the revenue from being construed as "proceeds" or "profit" under Section 552(b)).

This Court finds that the better-reasoned view is that Section 552(b) extends Chequers' pre-petition lien to the post-petition hotel room revenues. The Court essentially agrees with the analysis, philosophy, and result enunciated by the 5th Circuit Court of Appeals in *In the Matter of T–H New Orleans Limited Partnership,* 5 F.3d 86 (5th Cir.1983).

Although the Court concedes that this may not be the majority viewpoint,[1] in the absence of binding authority this Court declines to so hold for the following reasons:

For purposes of Section 552(b), the distinction between "tenant" and "guest" is much more elusive than appears on the surface. State law determines the validity of a security agreement, therefore both the Debtor and Chequers have referenced definitions contained in the Iowa Code Annotated. Though the Debtor accurately points out that hotel occupancy is specifically excluded from the Uniform Residential Landlord and Tenant Law, that does not necessarily lead to the conclusion that hotel guests are never intended to be "tenants" under Iowa Law. Rather, the exclusion suggests that the Iowa legislators simply did not intend hotel guests to be bound to the provisions contained in the landlord/tenant law.

Both parties have referenced other portions of the Iowa Code. Specifically, I.C.A. § 422.43(7) discusses the state tax on the receipts from the renting of "rooms, apartments, or sleeping quarters in a hotel, motel, inn ..." The statute also provides that "such renting is regarded as a sale of tangible personal property at retail." Nevertheless, the use of the word "rent" as it relates to payment for rooms in a hotel is compelling. Furthermore, although the renting of sleeping quarters in a hotel was referred to as "the sale of personal property" in that portion of the Iowa Code which covers state sales tax, this Court finds that such categorization was more likely directed to taxation purposes, rather than an intent to uniformly treat hotel revenues as personal property in all other legal issues. *Dewsnup v. Timm,* —— U.S. ——, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992).

■ Black's Law Dictionary defines rent as "consideration paid for use or occupancy of property. In a broader sense, it is the compensation or fee paid, usually periodically, for the use of any property, land, buildings, equipment, etc." *Blacks Law Dictionary* 1297 (6th ed. 1991). It is significant that there is nothing in the language or legislative history of 552(b) which suggests that rents should be restricted to payments

---

**1.** *See In re Majestic Motel Associates,* 131 B.R. 523 (Bankr.D.Me.1991); *In re Shore Haven Motor Inn, Inc.,* 124 B.R. at 617; *In re Oceanview/Virginia Beach Real Estate Assocs.,* 116 B.R. 57, 58–59 (Bankr.E.D.Va.1990); *In re Greater Atlantic and Pacific Inv. Group,* 88 B.R. at 356; *In re M. Vickers, Ltd.,* 111 B.R. 332, 335–37 (Bankr.D.Colo.1990); *In re General Associated Investors Ltd. Partnership,* 150 B.R. at 756.

from "tenants" only. *In the Matter of New Orleans Limited Partnership*, 5 F.3d at 92. As the court pointed out

> ... [A]bsent some clear and express indication by the Congress that the word "rents" was not to include revenue from hotels and motels, we see no reason to provide such exclusion by judicial interpretation. To the contrary, given the other broad, generic terms utilized by Congress in § 552(b), we believe a generic interpretation of "rents" as "payments made for the use of property" is most consistent with Congressional intent.

The danger in drawing a distinction between the two for purposes of Section 552(b) becomes more apparent when it is taken to its logical extreme. For instance, if Smith lives in an apartment for eight months, most would agree that he pays rent. But what if Smith were staying at the local motel for that same period of time? Would it make a difference if it were a residential hotel? What if Smith lived in the apartment only one month? One week? One day? How does a Court make that distinction? More importantly, is there a significant distinction between the mortgagee of the hotel and the mortgagee of the apartment that would justify such dramatically different treatment under Section 552(b)?[2]

■ That leads to a second point, the commercial expectations of the parties. The importance of this factor in the analysis should not be overlooked. As Chequers points out in its Reply Memorandum, if parties to a hotel loan transaction contemplated that a properly filed document containing an assignment of rents provision would be ineffective in the event of bankruptcy, it would very likely inhibit them from providing funding to hotel owners. As one court cautioned, if room revenues are not rents, an agreement to that effect is never valid. *In re S.F.*

*Drake Hotel Associates*, 131 B.R. at 160. Furthermore,

> Hotel room revenues are, or resemble, rents in that they are a primary component used by appraisers in valuing a hotel. The value of the income stream, rents, is a major factor in determining the value of the real property. The income is what the debtor and the secured lender look to for payment of the loan. To subtract room revenue from the consensual real property security greatly reduces the value of the creditor's collateral package.

*Id.*

The intent of the parties is significant. The mortgage encumbers:

> all rents, income, profits, revenues, royalties, bonuses, rights, accounts, contract rights, general intangibles and benefits ... arising out of the construction, use or operation of the premises or any parts thereof, and any other equitable or contract rights pertaining to the premises ...

The Assignment of Rents, Leases and Other Benefits encumbers:

> leases and lease guaranties together with any and all future leases and lease guaranties.... [the "Leases"]; and all rents, income and profits which may now or hereafter be or become due or owing under the Leases, and any of them; and all income, profits, revenues, royalties, bonuses, accounts, equitable and contract rights, general intangibles and benefits in any way pertaining to or an account of the use of the [Holiday Inn] ...

Thus, it was intended that the security interest be extended to the revenues generated from operation of the hotel.

### 2. The "Executory Contract" Issue

■ Historically, this Court has generally looked to the so-called "Countryman defini-

---

**2.** As Professor Freyermuth pointed out in his article, *Of Hotel Revenues, Rents, and Formalism in the Bankruptcy Courts: Implications for Reforming Commercial Real Estate Finance*, 40 UCLA 1501, in terms of economic reality, mortgage financing transactions involving hotels and mortgage financing transactions involving apartment complexes are identical.

The decision-making process of whether to acquire income-producing real estate is the same from transaction to transaction. "It is a financial decision free of other legal constraints ... the threshold inquiry remains the same regardless of the type of project—is projected net cash flow from the project sufficient to provide a suitable return?" 40 UCLA L.Rev. 1461, 1501–03 (1993).

tion" of an executory contract. Under that definition, it would seem to follow that an Agreement for Deed is, by its very nature, an executory contract because it involves an ongoing relationship with unperformed obligations for both parties. The seller, for instance, is obligated to execute and deliver a deed, something which strikes this Court as a significant unperformed obligation, indeed the most significant obligation the seller has to perform.

On the other hand, philosophically, this Court has no serious quarrel with the general proposition that an Agreement for Deed should not be treated in bankruptcy as an executory contract. It is, after all, essentially a form of security agreement. Moreover, the burden imposed on a Chapter 11 debtor under Section 365 to cure, compensate and provide adequate assurance is often onerous and may in itself impede a successful reorganization.

Having said that, the Court turns to what it deems the appropriate analysis of the issues here. Counsel have presented thoughtful arguments to support their respective positions. Having carefully considered them, in the final analysis the logic in the argument of Chequers must prevail, for the following reasons:

1. It appears that, as argued by Chequers in its Surreply Memorandum, both the Seventh Circuit and the Eighth Circuit look to the Countryman definition of an executory contract.

2. Although this case is filed in the Seventh Circuit, the situs of the contract and property is the Eighth Circuit. Under those circumstances, a U.S. Bankruptcy Court sitting in the Seventh Circuit should look to the Eighth Circuit for precedent. *Brown v. First National Bank in Lenox,* 844 F.2d 580 (8th Cir.1986) provides that precedent.

3. Turning next to applicable Iowa law, a purchaser's obligation to pay the purchase price and a seller's obligation to deliver the deed are significant obligations which fall squarely within the "Countryman definition".

4. The concept of equitable conversion, which was a critical factor in *In re Streets & Beard Farm Partnership,* 882 F.2d 233 (7th Cir.1989), is not applicable here. (Chequers' Surreply Memorandum, page 6.)

Those are the essential points of analysis, reduced to a bare minimum. Had this case been filed in Iowa, the location of the business, the legalistic gymnastics regarding applicable law would not have been encountered. The result is consistent with those courts holding that an Agreement for Deed is an executory contract. It is regrettable that a matter involving the legal relationship between parties in a bankruptcy case does not lend itself to a more certain rule of law.

\*    \*    \*    \*    \*    \*    .

This Memorandum Opinion deals only with the two issues raised in the Joint Motion for Summary Judgment. No order has been entered because the Motion from which these issues arose may involve other issues that remain to be decided.