**In re WEST CHESTNUT REALTY OF HAVERFORD, INC., Debtor.**

**V. DiFRANCESCO & SONS, Appellant,**

**v.**

**WEST CHESTNUT REALTY OF HAVERFORD, INC. and Official Committee of Unsecured Creditors, Appellees.**

Civ. A. No. 94–CV–3103.
Bankruptcy No. 93–15996 R.

United States District Court,
E.D. Pennsylvania.

Oct. 18, 1994.

Joanne Semeister, Kenneth Maiman, Montgomery, McCracken, Walker & Rhoads, Philadelphia, PA, for V. DiFrancesco & Sons.

Charles M. Golden, Edmond M. George, Obermeyer, Rebmann, Maxwell & Hippel, Philadelphia, PA, for West Chestnut Realty of Haverford, Inc.

J. Gregg Miller, Francis J. Lawall, Kurt F. Gwynne, Pepper, Hamilton & Scheetz, Philadelphia, PA, for Official Committee of Unsecured Creditors.

### MEMORANDUM AND ORDER

JOYNER, District Judge.

The issue in this appeal from the United States Bankruptcy Court for the Eastern District of Pennsylvania concerns whether "tipping fees" received by a landfill operator constitute "cash collateral" for purposes of 11 U.S.C. § 363. The Bankruptcy Court held that the tipping fees received by the landfill operator were not cash collateral. Because we agree with the reasoning of the Bankruptcy Court, we will affirm its judgment.

## I. FACTUAL AND PROCEDURAL HISTORY

The appellant in this case is V. DiFrancesco & Sons (DiFrancesco), a limited partnership organized under the laws of Pennsylvania. In July of 1982, the debtor and appellee in this action, West Chestnut Realty of Haverford (the debtor), purchased from DiFrancesco a parcel of land on which it currently operates a landfill. Most of the revenue generated in this endeavor is derived from "tipping fees," a term referring to the fees paid in exchange for the right to dispose of waste at a disposal site.

The property's purchase price was one million dollars. The debtor made a down payment of $35,000 and financed the remaining $965,000 by executing a note for that amount, naming DiFrancesco as the payee. The note was secured by a mortgage executed by the debtor, as mortgagor, in favor of DiFrancesco, as mortgagee. This security interest, which extended not only to the property but also to its rents, issues and profits, was duly recorded in the Office of the Recorder of Deeds for Delaware County, Pennsylvania in August of 1982.

On October 14, 1993, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Two weeks later, DiFrancesco filed a motion seeking an order preventing the debtor's use of the income generated from the tipping fees pursuant to 11 U.S.C. § 363, a provision preventing a trustee's use of cash collateral. The Bankruptcy Court denied DiFrancesco's motion, holding that the tipping fees did not constitute cash collateral. DiFrancesco now brings this appeal and argues that the Bankruptcy Court erred when it concluded that it could not prohibit the debtor's use of the revenue generated by the tipping fees. The issue for this Court, therefore, is whether the income generated from the tipping fees constitutes cash collateral. The issue presented is a legal one over which this Court's review is plenary. *In re Siciliano*, 13 F.3d 748, 750 (3d Cir.1994).

## II. DISCUSSION

Pursuant to section 552 of the Bankruptcy Code, if a debtor and another entity

enter into a security agreement prior to the filing of a debtor's Chapter 11 petition, and if that security agreement extends to property and its rents and profits, then the security interest extends also to rents and profits generated after the debtor has filed its Chapter 11 petition.[1] The determination as to whether the security agreement extends to rents and profits is made by examining "applicable nonbankruptcy law;" here, the law of Pennsylvania. *In re SeSide Co.*, 152 B.R. 878, 881 (Bankr.E.D.Pa.1993) (citing *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979)). Further, section 363 prohibits the trustee from using or selling cash collateral unless it receives either permission from the other parties in interest or the authorization of the Bankruptcy Court. 11 U.S.C.A. § 363(c)(2) (West 1993).[2]

■ Thus, if the monies derived from the tipping fees since the debtor filed its Chapter 11 petition are "profits," then the income remains subject to DiFrancesco's security interest and it may not be used without either DiFrancesco's permission or court approval. But if the tipping fee revenue, as the debtor argues, is instead an "account" or some other form of personal property, then the income would not be subject to the lien and the debtor would be free to use the revenue as it wishes. *SeSide Co.*, 152 B.R. at 881.

■ This Court's task, therefore, is to determine whether the tipping fee income is cash collateral.[3] Although DiFrancesco raised a variety of theories in an effort to convince the Bankruptcy Court that the tipping fee revenue constituted cash collateral, its only argument on this appeal is that the tipping fee income fits under the cash collateral definition as "profits of property." At the outset, we note that the term "profits," as used in this context, does not refer generally to all business profits, but instead connotes an interest in real property. *In re Majestic Motel Assocs.*, 131 B.R. 523, 525 (Bankr. D.Me.1991). Thus, "profits" refers to the income generated from the land itself, " 'the produce of the soil,' " but not the income produced as a result of the operation of a business on the mortgaged property. *Id.* (quoting *Detroit Trust Co. v. Detroit City Serv. Co.*, 262 Mich. 14, 247 N.W. 76, 85 (1933)); *see In re Zeeway Corp.*, 71 B.R. 210, 211 (9th Cir. BAP 1987) (gate receipts not profits since income was derived not from the real property, but from the business conducted thereon); *In re Corner Pockets of Southwest, Inc.*, 85 B.R. 559, 563 (Bankr.D.Mont. 1988) (funds generated by debtor's business not cash collateral since income arose not from land but from services provided on the property).

■ Defined in this way, "profit" is the direct descendent of the profit a prendre at common law. In general, a profit a prendre is a right to make some use of the soil of another, such as a right to mine metals; the underlying principle is that it carries the right of entry and the right to remove and take from the land the designated products or profit; in addition it includes

1. Section 552 provides that
   if a debtor and an entity entered into a security agreement before the commencement of the case and if the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, product, offspring, rents, or profits of such property, then such security interest extends to such proceeds, product, offspring, rents, or profits acquired by the estate after the commencement of the case to the extent provided by such security agreement and by applicable nonbankruptcy law....
   11 U.S.C.A. § 552(b) (West 1993).

2. Section 363(c)(2) provides as follows:
   The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—

   (A) each entity that has an interest in such cash collateral consents; or
   (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

3. Section 363(a) defines cash collateral as
   cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.
   11 U.S.C.A. § 363(a) (West 1993).

the right to use such of the surface as is necessary and convenient for the exercise of the profit.

*Costa Mesa Union Sch. Dist. v. Security First Nat'l Bank,* 254 Cal.App.2d 4, 11–12, 62 Cal.Rptr. 113, 118 (1967) (citations omitted). The Supreme Court of Pennsylvania has long agreed with this general definition of profit, noting that a profit a prendre consists of a right "such as taking soil, gravel, minerals and the like from another's land." *Tinicum Fishing Co. v. Carter,* 61 Pa. 21, 39 (1869). Thus, the characteristics of profit, in the context of this dispute, are the right of entry and the taking away of the bounty of the land.

DiFrancesco attempts to analogize the taking away of oil or minerals to the funds generated from the disposing of waste in a landfill. Describing the landfill as a finite hole in the ground, DiFrancesco argues that just as there is only so much mineral wealth in a given space and that the value of the land diminishes as the minerals are extracted, so too is there a limited space in which waste can be deposited, and the value of the land decreases the more the landfill is used. DiFrancesco terms this process "reverse mining."

While DiFrancesco's argument is not without a certain appeal, this Court declines to extend the traditional definition profit, which has been characterized by the taking away of the fruit of the land, to include the dumping of trash at a landfill. First, it is clear that the debtor's customers do not acquire property rights when they pay their tipping fees. They merely pay for the right to come onto the land in order to dispose of their debris. Further, the Bankruptcy Court found, as a matter of fact, that the tipping fees are "generated at least in some degree by incidental services provided by the Debtor." *In re West Chestnut Realty,* 166 B.R. 53, 57 (Bankr.E.D.Pa.1993). This suggests that the income derived from the tipping fees is more properly described as profit generated from the operation of a business on the property than as profit from the land itself. As a result, the tipping fee revenue is not profit, and consequently, it cannot be cash collateral.

### III. *CONCLUSION*

Because the income derived from the collection of tipping fees is not profit, it cannot be cash collateral for section 363 purposes. Accordingly, the appeal is denied.